UNITED STATES, Appellant

v

CARL B. CUTTING, Private, U. S. Marine Corps, Appellee

14 USCMA 347, 34 CMR 127

348

*Major Daniel F. McConnell* argued the cause for Appellant, United States.

*Lieutenant Colonel John L. Ostby* argued the cause for Appellee, Accused.

## Opinion of the Court

FERGUSON, Judge:

Brought to trial before a special court-martial convened by the Commanding Officer, Marine Barracks, U.S. Naval Base, Boston, Massachusetts, the accused pleaded guilty to charges of absence without leave, willful disobedience of the command of a superior warrant officer, and failure to obey a lawful order, in violation, respectively, of Uniform Code of Military Justice, Articles 86, 91, and 92, 10 USC §§ 886, 891, 892. He was duly found guilty and sentenced to bad-conduct discharge, forfeiture of $55.00 per month for six months, and confinement at hard labor for six months. The convening authority approved the sentence. The supervisory authority reduced the period of confinement and forfeitures to four months, but otherwise affirmed. With one member dissenting, the board of review likewise affirmed, and The Judge Advocate General of the Navy, noting the then pending appeal in United States v Culp, 14 USCMA 199, 33 CMR 411, certified its decision to this Court upon the following question:

"Was the Board of Review correct in holding that, under the circumstances of this case, the accused did not have an absolute right to qualified counsel?"

On August 19, 1963, this Court directed that briefs also be filed on, among other things, the following issue:

"1. Whether the accused was denied individual counsel of his own choice:

(a) by failure of the Convening Authority to act on the request for military counsel;

(b) by depriving the accused of the opportunity to make known his request for military counsel while confined in the brig;

(c) by the accused acquiescing in representation by other than a military lawyer to prevent further delay of trial."

The court-martial convened for accused's trial on February 26, 1963. At that time, his appointed nonlawyer defense counsel was present. At the time of arraignment, he requested a continuance in the following manner:

"DC: The accused would like to request a continuance for a period of 10 days for purposes of requesting a military lawyer. The defense is in contact with District Legal and have been informed that a military lawyer would not be available for the next ten days, after which there is some question whether one will be available or will not be. But a decision cannot be made until then. The defense would like to ask for a ten day continuance."

Trial counsel opposed the motion and pointed out "this is the first day that prosecution has heard of any such request," and that the accused "has had ample opportunity to request, I feel, individual counsel." In rebuttal, counsel for the accused pointed out he had discussed Private Cutting's case with him on February 5. On that

occasion, Cutting "indicated to me his desire to have a military lawyer represent him" but "had not made up his mind." Counsel instructed accused, who was confined, "to call me at some later time from the brig and indicate to me whether or not he desire[d] such representation." As he did not hear from the accused, he assumed Cutting did not wish to seek the services of an attorney and took no action. On the morning of the trial, however, counsel learned that "he desires a military lawyer and that he had attempted to contact me by telephone and that this request was denied by the Brig Warden then on duty."

Following consultation with the members of the court in closed session, the president granted the defense motion for a continuance.

The court-martial reconvened on March 8, 1963. Accused was again represented by his appointed nonlawyer counsel. Trial counsel inquired whether accused "had ample opportunity to obtain individual counsel." Defense counsel replied:

"DC: Counsel for the accused has as late as this morning, was in contact with available counsel which the accused had requested. I have been informed that such counsel will not be available now or in the foreseeable future. The accused, in view of this, desires to go to trial with the appointed counsel."

Thereafter, the arraignment was completed, accused's plea was received, and the trial proceeded to its conclusion.

At the outset, we answer the precise certified issue in the affirmative. In United States v Culp, ■ supra, the question of the qualifications of appointed counsel in special courts-martial was lengthily considered by the Court, and for the reasons set forth in the various opinions in that case, our reply to The Judge Advocate General's inquiry must be as indicated.

This, however, does not dispose of the case. Cf. United States v Thornton, 8 USCMA 446, 24 CMR 256. After the record of trial came before us on

certificate, examination of its contents revealed a serious matter which, as noted above, we ordered briefed and argued. Basically, it involves the question of accused's entitlement, upon request, to the services of a duly qualified military lawyer at his trial by special court-martial.

Code, supra, Article 38, 10 USC § 838, provides pertinently:

"(b) The accused has the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him, or by military counsel of his own selection if reasonably available, or by the defense counsel detailed under section 827 of this title. . . ."

The purpose of the Article was to continue in the Code the accused's right under antecedent legislation ■ to have military counsel of his choice represent him if the latter was reasonably available. House Report No. 491, 81st Congress, 1st Session, page 21; Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, pages 1021–1023. It continued the qualification of reasonable availability even though one witness declared the standard to have been "the cause of most of the criticism . . . with relation to the furnishing of counsel, by the command, to a defendant." House Hearings, supra, page 684.

The Manual for Courts-Martial, United States, 1951, indicates that this "*initial* determination of ■ the availability of requested counsel shall be made by the convening authority—and further provides that this decision is 'subject to revision by his next superior authority on appeal by or on behalf of the accused.'" (Emphasis supplied.) United States v Vanderpool, 4 USCMA 561, 565, 16 CMR 135; Manual, supra, paragraph 48b. The Manual interpretation of Code, supra, Article 38, is supported by review of similar questions on petition of *habeas corpus*. Hiatt v Brown, 339 US 103, 94 L ed 691, 70 S Ct 495 (1950); Henry v

Hodges, 171 F2d 401 (CA 2d Cir) (1948).

The question is one requiring the exercise of the convening authority's discretion in light of all the circumstances, including the duties assigned the requested officer, military exigencies, and similar considerations—in short, "a balance between the conflicting demands upon the service," Henry v Hodges, supra, at page 403, or, to paraphrase the statute involved, a sound reason for denying to the accused the services of the representative whom he seeks.

The determination of the convening authority and his superior does not, however, end the matter. The Manual does not purport to set forth any such principle, nor, indeed, could it do so. United States v Smith, 13 USCMA 105, 32 CMR 105. Rather, it addresses itself to providing an orderly procedure for the disposition of the usual pretrial requests for the services of counsel, which, as it indicates, are normally processed by appointed defense counsel through the trial counsel to the convening authority, with opportunity being granted to appeal his decision to the next higher authority. Manual, supra, paragraph 40b; United States v Vanderpool, supra. If the disposition of the matter is unsatisfactory to the accused, he may renew his request at trial and preserve the issue for ultimate appellate scrutiny, if such be necessary. As we noted in United States v Goodson, 1 USCMA 298, 3 CMR 32, at page 300:

". . . He [the accused] is entitled to select counsel of his own choice, and may object to being defended by the person appointed if he desires to do so. Reviewing authorities can always reverse convictions where failure to appoint an officer has substantially injured the accused."

See also United States v Miller, 7 USCMA 23, 28, 21 CMR 149, 154; United States v Wright, 10 USCMA 36, 27 CMR 110; and United States v Tellier, 13 USCMA 323, 32 CMR 323.

Having satisfied ourselves that a con- vening authority's discretionary refusal to provide an accused with counsel is not final and may present an issue for decision at the trial level and on appeal, we turn to the record before us. At the outset, the Government urges upon us the proposition that the accused, having "made a free-will election to proceed with appointed counsel," may not now complain that he was not given individual counsel of his choice or that the convening authority did not pass upon the matter. On the facts set forth in this record, we disagree, for it clearly appears the accused was satisfied to proceed only because he was informed that counsel was not then available and would not be available in the foreseeable future. Faced with the alternatives of going to trial with appointed counsel or remaining indefinitely in pretrial confinement without any assurance the latter course would bring him relief, it is understandable that he chose the former path. This hardly amounts to an exercise of free will. It was only "in view of" the denial of counsel to him that accused determined to go to trial. Courts indulge every reasonable presumption against the waiver of fundamental rights and do not presume acquiescence in their denial. Johnson v Zerbst, 304 US 458, 82 L ed 1461, 58 S Ct 1019 (1938); United States v Mulvey, 10 USCMA 242, 27 CMR 316. We cannot, therefore, on the basis of the transcript before us, hold that the accused freely and knowledgeably agreed to forgo his repeated desire for legal representation and accept only the advocacy of his appointed counsel. Cf. United States v Goodson, supra.

Turning, therefore, to the merits of the case, we find the record establishes that Private Cutting, from the time of his first meeting with appointed counsel, expressed a desire to be represented by an individual military lawyer qualified within the meaning of Code, supra, Article 27, 10 USC § 827. When he sought again to contact his appointed representative with a view to securing such counsel, he alleged that he was

351

prohibited from doing so by confinement authorities. And before the president of the court-martial commendably granted him a continuance in order that his desires might be effectuated, the transcript reveals only that the matter had been taken up with "District Legal," which indicated no decision would be forthcoming for approximately ten days. Finally, as late as the morning on which the court reconvened, "available counsel which the accused has requested," informed appointed counsel that he was "not . . . available now or in the foreseeable future." There is not the slightest indication in the record that the question was ever submitted to the convening authority or the Commandant of the Naval District for his decision in the premises or that he had the opportunity to exercise his discretion. Cf. Henry v Hodges, supra; United States v Vanderpool, supra. Nor does the record offer any basis for the conclusion of unavailability. While the burden is normally on the aggrieved party to support his contention of abuse, we are loath so to charge one represented by untrained counsel when considering a matter of basic statutory entitlement. Particularly are we reluctant to do so when the record indicates more than a fair probability that the responsible officers were never made aware of a situation demanding their personal attention. Rather, we believe the matter should be resolved at the primary level at which an appropriate showing may be made by both parties. In short, there are numerous, unanswered factual questions here that should be resolved at a level where testimony can be taken, witnesses examined, and testimony offered in rebuttal. In this manner the rights and interests of the accused and the Government will be preserved. United States v Thomas, 13 USCMA 163, 32 CMR 163.

We cannot leave this matter without offering further observations concerning administration of an accused's rights under Code, supra, Article 38.

While in United States v Culp, supra, the Court declared an accused's appointed counsel in a special court-martial need not be legally qualified, it is, as noted above, equally clear that Congress afforded him the right to be so represented if he made an appropriate request and an attorney was reasonably available. Subject to the exigencies of the service, we think that convening and supervisory authorities should be extremely liberal in furnishing qualified counsel, particularly in those cases in which the severe punishment of a bad-conduct discharge may be adjudged. Certainly, the quality of justice is always enhanced by the use of trained personnel. It is equally apparent that Congress intended no grudging application of Article 38 in enacting this remedial legislation.

At the same time, the case before us teaches the need to record the action of appropriate officers on accused's request, together with any reason for its refusal. Only then will this Court and other agencies be able to make an enlightened decision concerning its disposition before or at trial. Truly, knowledge judicially set down is the soundest basis for informed action and when it is absent, we are faced with the unsatisfactory alternatives of reversing in order to allow orderly development of the facts or categorically affirming a serious penalty in light of what may fairly prove to be an improper ruling concerning a fundamental right. All this can be avoided by simply making the proceedings part of the transcript when, as here, the issue arises.

The certified question is answered in the affirmative. The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.