UNITED STATES, Appellee

v

HENRY MITCHELL, Private, U. S. Army, Appellant

15 USCMA 516, 36 CMR 14

Captain Francis R. Jones argued the cause for Appellant, Accused. With him on the brief were Colonel Joseph L. Chalk, Lieutenant Colonel Martin S. Drucker, and Captain J. Philip Johnson.

Captain Anthony L. Tersigni argued the cause for Appellee, United States. With him on the brief were Colonel Edwin G. Schuck, Lieutenant Colonel Francis M. Cooper, and Captain Samuel D. Engle, Jr.

## Opinion of the Court

KILDAY, Judge:

The accused, Mitchell, together with one Private First Class Alphonso J. Baylor,[1] was charged with a single specification of attempted robbery, and four specifications of robbery, in violation of Articles 80 and 122, Uniform Code of Military Justice, 10 USC §§ 880 and 922, respectively. The two were originally jointly charged and a common investigation was held. Apparently because Mitchell requested that enlisted personnel serve on his court, however, there was a severance and separate trials were held.

Accused pleaded not guilty, and a general court-martial acquitted him of two of the robbery specifications, and made a minor exception as to a third. He was, however, found guilty of the attempt and two counts of robbery. The court members sentenced him to dishonorable discharge, total forfeitures, confinement at hard labor for ten years, and reduction to the grade of Private E-1. Accused's conviction and punishment were approved by the convening authority. Thereafter, a board of review in the office of The Judge Advocate General of the Army reduced the term of confinement to five years, but otherwise affirmed the findings and sentence.

Upon accused's petition to this Court for grant of review, we set his case

[1] See United States v Baylor, 15 USCMA 522, 36 CMR 20, decided this day.

down for argument on two assignments of error relating to a request made by him at the Article 32 investigation, for individual military defense counsel.

The record reflects that, at the pretrial investigation, the accused Mitchell and Baylor requested the services of Captains Kravit and Johnson to represent them. Appended to the investigating officer's report, and bearing the same date, is Mitchell's written request for Kravit as his counsel. The investigating officer marked a block on his report form indicating that counsel requested by name was not reasonably available, but made no explanation with reference to that item as the instructions on the form direct when the request cannot be honored, and the record is otherwise silent as to what happened with respect to Mitchell's request. The report further indicates that the accused requested the general court-martial authority to appoint counsel, and one Lieutenant Hagedorn, a qualified attorney, was appointed. He represented both Mitchell and Baylor at the Article 32 proceedings and, later, at their separate trials.

Neither at the Article 32 investigation nor at Mitchell's trial was any objection interposed as to the nonavailability of the originally requested individual counsel, or as to the appointment of Lieutenant Hagedorn to represent him. For the first time, before the board of review, appellate defense counsel argued that, since Mitchell had re-

517

quested individual defense counsel and the record did not show any proper action on this request, reversal was required. The board of review rejected this assertion of error, and it is to this question that the assignments upon which we granted review pertain.

Basically, the position of the defense before this Court is that an accused, under the Uniform Code, is entitled to representation by appointed military counsel and by an individually selected civilian or military counsel as well, and that this valuable right extends both to the pretrial and the trial proceedings. See United States v Tellier, 13 USCMA 323, 32 CMR 323, and United States v Potter, 14 USCMA 118, 33 CMR 330; and authorities therein cited. Accordingly, where accused Mitchell had requested the services of Captain Kravit and the record does not show compliance with prescribed procedures for determining whether individual counsel was reasonably available,[2] appellate defense counsel seek to bring the instant case within the pale of our decision in United States v Cutting, 14 USCMA 347, 34 CMR 127. They refer to our statement there, as to determination of availability, that:

> "The question is one requiring the exercise of the convening authority's discretion in light of all the circumstances, including the duties assigned the requested officer, military exigencies, and similar considerations—in short, 'a balance between the conflicting demands upon the service,' . . . or, to paraphrase the statute involved, a sound reason for denying to the accused the services of the representative whom he seeks." [United States v Cutting, supra, at page 351.]

Reliance is placed on the fact that in that instance, where there was no indication in the record that the question was ever submitted to the convening authority, nor that he had an opportunity to exercise his discretion, and the record otherwise failed to demonstrate any basis for the conclu-

sion of unavailability, we reversed. See also United States v Gatewood, 15 USCMA 433, 35 CMR 405.

We are unable to accept the defense contention that *Cutting*, supra, requires reversal of the instant case. And because of the reasoning we follow in reaching our conclusion we find it unnecessary to rule on appellate defense counsel's motion to strike certain documents attached to the Government's brief. The same consist of affidavits purporting to show how the requests of both accused were handled and their satisfaction that Lieutenant Hagedorn represent them. In light of the approach we follow, there is no occasion to consider the contents of the documents and we may appropriately disregard them in deciding the case at bar. We merely point out that the proper scope for use of such appellate exhibits is set forth in United States v Roberts, 7 USCMA 322, 22 CMR 112, and we repeat, at this time, the admonition that we are loath to engage in battles of affidavits on appeal. It is at the trial forum that all ordinary matters should be aired and put on the record.

Turning our attention to the merits of the case, we see no difference whether accused's request be considered as one for individually selected counsel at the Article 32 investigation, or whether, as appellate defense counsel urge, what the accused asked for was representation at all levels, including trial. The answer must be the same in either instance.

Assuming the nature of the request to be that first mentioned, then the defense cannot prevail for the reason that no timely action was taken to complain that accused's rights had not been honored. The accused Mitchell was, as we have previously noted, represented at the pretrial proceedings and throughout trial by a qualified lawyer. Yet never, at any time, was any protest voiced as to the unavailability of Captain Kravit or to the appointment of the officer who in fact acted as defense

---

[2] See Articles 32(b) and 38(b), Uniform Code of Military Justice, 10 USC §§ 832 and 838; and paragraphs 34b and c, and 48a and b, Manual for Courts-Martial, United States, 1951.

counsel. Under those circumstances, the rule is well settled that the matter is not preserved for appeal and must be deemed to have been waived when a complaint is made for the first time on appeal regarding alleged defects in pretrial proceedings. United States v McCormick, 3 USCMA 361, 12 CMR 117; United States v Allen, 5 USCMA 626, 18 CMR 250; United States v Tomaszewski, 8 USCMA 266, 24 CMR 76; United States v Mickel, 9 USCMA 324, 26 CMR 104; United States v Gandy, 9 USCMA 355, 26 CMR 135; United States v Rehorn, 9 USCMA 487, 26 CMR 267; United States v Wright, 10 USCMA 36, 27 CMR 110; United States v Ragan, 14 USCMA 119, 33 CMR 331. As was stated in the *Mickel* case:

". . . [I]f an accused is deprived of a substantial pretrial right on timely objection, he is entitled to judicial enforcement of his right, without regard to whether such enforcement will benefit him at the trial. At that stage of the proceedings, he is perhaps the best judge of the benefits he can obtain from the pretrial right. Once the case comes to trial on the merits, the pretrial proceedings are superseded by the procedures at the trial; the rights accorded to the accused in the pretrial stage merge into his rights at trial. If there is no timely objection to the pretrial proceedings or no indication that these proceedings adversely affected the accused's rights at the trial, there is no good reason in law or logic to set aside his conviction.

"The law demands that an accused, who is aware of error in preliminary procedures, make timely objection to preserve his rights." [United States v Mickel, supra, at page 327.]

Moreover, it may be noted that it is not open to argument whether these authorities apply to the question of counsel at the pretrial level, as *Tomaszewski, Mickel,* and *Gandy,* supra, concern precisely that matter.

The same result must follow if the accused's request is to be considered as one to include representation at trial. Appellate defense counsel argue that this Court's decision in the *Cutting* case compels reversal here, but their reliance on that decision is misplaced. Indeed, in actuality that decision recognizes the same principle found in the previously cited authorities.

There, unlike the case at bar, the question of accused's willingness to proceed to trial with appointed counsel, rather than individual counsel, was raised at trial. We rejected the Government's contention that Cutting had "made a free-will election to proceed with appointed counsel," noting that the trial transcript reflected accused was willing to go forward only "in view of" the fact his request for individual counsel had been denied. Specifically with regard to the process for handling requests for counsel, Judge Ferguson stated, for a unanimous Court:

". . . If the disposition of the matter is unsatisfactory to the accused, he may renew his request at trial and preserve the issue for ultimate appellate scrutiny, if such be necessary. As we noted in United States v Goodson, 1 USCMA 298, 3 CMR 32, at page 300:

'. . . He [the accused] is entitled to select counsel of his own choice, and may object to being defended by the person appointed if he desires to do so. Reviewing authorities can always reverse convictions where failure to appoint an officer has substantially injured the accused.'

"See also United States v Miller, 7 USCMA 23, 28, 21 CMR 149, 154; United States v Wright, 10 USCMA 36, 27 CMR 110; and United States v Tellier, 13 USCMA 323, 32 CMR 323." [United States v Cutting, supra, at page 351.]

Here, as the board of review pointed out, accused was represented at all levels by a duly certified and qualified lawyer and at no time has there been even the slightest suggestion that he was other than completely satisfied with such representation. There was no objection whatever raised as to the unavailability of requested counsel nor as to Lieutenant Hagedorn acting as defense counsel. In light of the fore-

going authorities, it is apparent that the board of review correctly distinguished the case at bar from *Cutting*. Manifestly, regardless of how the accused's request is construed, the point has not been preserved for appeal.

Indeed, to hold otherwise would be to make a shambles of the orderly procedures the law directs and which this Court has attempted to foster. In the absence of any objection being interposed, or the defense's dissatisfaction in proceeding being otherwise spread on the record at trial, the law officer—the very functionary from whom relief should be sought when a request for special counsel has not been honored—might very well be, as he apparently was in the instant case, ignorant that such request has ever been made. To saddle a law officer who is unaware of any request or that any problem exists, with the responsibility of acting on the same or proceeding at his peril, is patently to require the impossible. It would make a mockery of the judicial process to hold solemn trial proceedings for naught on appeal, when the defense has sat silently by in the trial forum and induced by such inaction the very situation as to which complaint is later made if the trial verdict proves unfavorable. Were that situation to be countenanced, then by silence at trial, reversal on appeal could be assured in the event of a conviction. As Chief Judge Quinn observed in United States v Wolfe, 8 USCMA 247, 24 CMR 57, "A criminal trial is not a guessing game," and orderly trial procedures certainly do not embrace the guessing game to which a law officer would be put if our decision here were to be different than that we announce.

As we stated in a caveat in *Cutting*, supra, at page 352:

". . . [T]he case before us teaches the need to record the action of appropriate officers on accused's request, together with any reason for its refusal. Only then will this Court and other agencies be able to make an enlightened decision concerning its disposition before or at trial. Truly, knowledge judicially set down is the soundest basis for informed

action and when it is absent, we are faced with the unsatisfactory alternatives of reversing in order to allow orderly development of the facts or categorically affirming a serious penalty in light of what may fairly prove to be an improper ruling concerning a fundamental right. All this can be avoided by simply making the proceedings part of the transcript when, as here, the issue arises."

We again strongly commend that advice to those who deal with cases in the field. Had it been followed in the case at bar, our present inquiry would have been obviated. But so, too, must we insist that orderly processes be followed so that an issue is raised at trial when previous disposition of matters such as this is deemed unsatisfactory. In that manner, meaningless proceedings and unnecessary remedial steps are avoided. The problem, the position of the parties, and the pertinent factors bearing thereon are spread on the record for consideration by the law officer—who has the authority and, indeed, the duty to act on such matters—and for later review, if necessary, on appeal. A concrete, rather than abstract situation is thus presented. Such orderly development of contested issues obviates speculation or conjecture as to the contention of the parties or the facts that bear thereon, protects the interest of all, and avoids the unnecessary time and expense incident to arguing on review matters that could and should be litigated or settled at trial.

In connection with this situation, we further observe that, under the decision in United States v Fry, 7 USCMA 682, 23 CMR 146, the law officer in the case at bar cannot be faulted even for being unaware that accused had ever requested the services of individually selected counsel, much less of the possibility that the disposition of such a request was not satisfactory to him. While we strongly reaffirm the position that contests over matters of this sort must be raised and litigated at the proper level, the trial forum, we deem it appropriate to take this occasion to re-examine some of the language in the *Fry* opinion, especially in light of developments in and experience as to

the administration of military justice subsequent to the time of that decision.

In United States v Fry, supra, where we considered certain pretrial actions by the law officer, we were concerned with a case tried less than five years after the effective date of the Uniform Code of Military Justice, and with the general administration of courts-martial under the same. The opinion of this Court evinced a concern that court-martial proceedings be impartially administered, and entirely free of any bias. It was pointed out that, under the Uniform Code and the provisions of the Manual for Courts-Martial, United States, 1951, the permissible scope of pretrial association by a law officer with a case was not necessarily so broad as that allowed a civilian judge. In light of those facts, and against the background of experience at that time with the operation of a relatively new system, this Court discouraged law officers from extensive familiarization with the pretrial investigation and expected testimony.

Over the years since that time, we are confident from our experience that the system has matured and the administration of military justice has considerably improved. Particularly have improvements as to the manning of courts-martial by professional law officers demonstrated their worthwhile nature,[3] and review of thousands of records in the intervening period has reflected an improved and, generally speaking, commendable level of experience, competence, impartiality, independence, and judicial temperament on their part.

In light of that experience we take this occasion to state that, to the extent United States v Fry, ■ supra, may have been understood to forbid pretrial familiarization by law officers with the cases upon which they are to sit, we reject such an interpretation. Indeed, it is to be noted that no outright ban

was either intended or imposed by *Fry* for, although we questioned certain of the law officer's pretrial activities, his performance at trial was there assessed on its merits and not even any hint of impropriety by him was found. And we took that same approach in United States v Hodges, 14 USCMA 23, 33 CMR 235. See also United States v Law, 10 USCMA 573, 28 CMR 139.

While this Court will always zealously guard against those situations where a law officer, or any other party to a court-martial trial—whether unwittingly or otherwise—evidences bias or in other fashion abandons a proper judicious approach to his task, we are convinced that there is no longer any reason[4] to discourage law officers from preparing for trials by referring to the pretrial files for a general examination of the record to see if there are legal issues that may arise, and to assist them in efficiently discharging their responsibilities as trial judges. To the contrary, the gaining of background—whether by way of legal research or otherwise—as to better enable the fulfillment of duties, is to be encouraged. Within the limitations fixed by applicable provisions of the Code and the Manual, the critical consideration in this area is not whether a law officer has perused the pretrial file or prepared for the trial, but whether he properly maintains his fair and impartial attitude, and guards against embroiling himself so deeply in particulars not necessary to his preparation as to create any predisposition on his part. See United States v Hodges, supra. We have no desire to impede or hamper helpful preparation for trial, and we confidently trust that military justice will continue to be administered with the same improved objectivity, impartiality, and judicial demeanor that generally characterizes the system today.

In light of the foregoing discussion, it is evident that we must reject the defense's contention that reversal is required on the ground that there is no

---

[3] See, for example, Weiner, The Army's Field Judiciary System: A Notable Advance, 46 American Bar Association Journal 1178 (1960); Creech, Congress Looks to the Serviceman's Rights, 49 American Bar Association Journal 1070, 1074 (1963).

[4] See United States v Allbee, 5 USCMA 448, 18 CMR 72.

showing in the record of proper action on accused's request for individual counsel. No question having been raised at trial, the matter is not preserved for appeal and must be held to have been waived. United States v Mickel and United States v Cutting, supra, and allied cases.

But brief comment is necessary on the companion assignment, wherein appellate defense counsel complain that the board of review erred in requiring a finding of specific prejudice in accused's representation at trial. The gist of the argument is that such consideration is improper where the issue is denial of individual military counsel selected by accused.

That position may have merit in another setting, but we find no fault with the board of review's reference to prejudice here. As has previously been noted, we are in agreement with the board's conclusion that the facts of this case distinguish it from *Cutting* and require a different result. Of course,

however, it is settled law that the principle of waiver is relaxed and the same will not be enforced when to do so would result in a miscarriage of justice. Accordingly, the short answer to this question is that no error was committed by inquiring whether accused was competently represented throughout the proceedings by a qualified lawyer, or by assessing the fair risk of prejudice because he was represented by counsel other than the one he initially requested. Indeed, a reading of the authorities upon which we rely herein will show that this Court has considered the question of prejudice in invoking the principle of waiver. We agree with the board of review that not the slightest prejudice to accused may be perceived because of his representation by Lieutenant Hagedorn. Hence, it is obvious no miscarriage of justice results from this disposition.

For the foregoing reasons, the decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.