UNITED STATES, Appellant

v

CHARLIE EASON, III, Corporal, U. S. Marine Corps,
Appellee

21 USCMA 335, 45 CMR 109

No. 24,770

April 21, 1972

*Captain John P. Proctor,* USMCR, argued the cause for Appellant, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

*John G. Arch, Esquire,* argued the cause for Appellee, Accused. With him on the brief were *Lawrence J. Fleming, Esquire,* and *Commander Maitland G. Freed,* JAGC, USN.

─Opinion of the Court

DUNCAN, Judge:

This case is before us on the following question, certified by the acting Judge Advocate General:

"Was the United States Navy Court of Military Review correct in its determination that the Government was required as a matter of law to make Captain Provine available to represent the accused?"

The basic facts are these. One or two days after the alleged occurrences Captain Provine was appointed to represent the appellant as defense counsel. A satisfactory attorney-client relationship was established, with counsel conferring frequently, almost daily, with his client. Provine represented the appellant at the Article 32 investigation which commenced on January 31, 1969, and during the taking of a

**335**

deposition on February 21, 1969, of an eyewitness to the incident who was soon to be rotated for duty in the United States.

During February 1969, Mr. John G. Arch became involved in the case as individual civilian counsel. On March 3, the appellant expressed a desire that Mr. Arch not come to Vietnam but to continue to represent the appellant in the United States while Provine continued to represent him during the proceedings in Vietnam.

In late February arrangements were made for the appellant to be transferred to Japan for psychiatric evaluation. Provine, having been denied permission to accompany the appellant, advised him not to participate in the psychiatric portion of the examination insofar as it might relate to disclosing facts of the incident, but to submit to observation, physical examination, and neurological examinations. The appellant complied with his counsel's advice. A sanity board concluded that the appellant was sane at the time of the offenses and had sufficient mental capacity to cooperate in his own defense. On May 27, charges alleging premeditated murder and other offenses were referred to trial as a capital case by a general court-martial. Captain Provine appeared as appointed defense counsel on the convening order. Trial counsel, Captain Griffis, and Captain Provine informally agreed on a trial date of June 19, conditioned upon the arrival of Mr. Arch.

On June 15, the convening authority, at the solicitation of Captain Provine and Mr. Arch, agreed to permit the appellant to return to the United States for further evaluation. During this delay, the originally designated trial counsel, Captain Griffis, and various witnesses rotated or were under orders to rotate to the United States. On or about August 20, the convening authority communicated with the Commandant, United States Marine Corps, and suggested that a change in the situs of trial would be appropriate since the various witnesses and the appellant were or would soon all be in the United States.

On September 25, the Commandant authorized the withdrawal of the existing charges and directed that the matter be forwarded to the Commanding General, Marine Corps Base, Quantico, Virginia, for such action as he deemed appropriate. The latter, upon receipt of the appropriate papers, referred the charges as a capital case to a general court-martial for trial. Captain Griffis, who was then stationed at Quantico, was again designated as trial counsel.

While these official actions were taking place, the appellant had undergone additional psychiatric evaluation at the Naval Hospital, Philadelphia, Pennsylvania. On November 4, he arrived at Quantico and shortly thereafter, Lieutenant Fleming was designated as defense counsel despite the appellant's request that Captain Provine continue to assist in his defense. Appellant's formal request for Provine's services, by letter dated December 16, 1969, was forwarded to the Commanding General, Marine Corps Base, Camp Pendleton, California, where Provine was stationed.

The proceedings commenced on December 29 and while the appellant consented to Captain Provine's absence at the Article 39(a) session, he specifically requested that Provine be present at trial and that Lieutenant Fleming remain as associate counsel. The formal request for Provine's appearance was denied on January 8, 1970, on the ground that he was not reasonably available.[1]

On January 12, 1970, at a further Article 39(a) session, defense counsel objected to the denial of Captain Provine's presence, but the military judge refused to grant an indetermi-

[1] In an affidavit Captain Provine disputed his *unavailability* and stated he was desirous of continuing his obliga-tion to represent the appellant in his defense.

nate continuance since there was no guarantee that Provine would ever be made available. A further request on January 16 that the Commanding General, Quantico, subpoena Captain Provine as a witness was denied. Mr. Arch and Lieutenant Fleming defended the appellant at trial.

Before the Court of Military Review the appellant contended that he was denied the effective assistance of his appointed defense counsel, Captain Provine, and that unlawful command influence was exerted to conceal the facts of his availability. The Government alleged that when the original charges were withdrawn Captain Provine ceased to be the appointed defense counsel for the appellant; that the Commanding General, Camp Pendleton, did not abuse his discretion in determining that Captain Provine was not reasonably available to serve as personally selected military defense counsel; and that unlawful command influence was not exerted in this case. Regarding these conflicting claims, the Court of Military Review stated:

". . . [W]e consider that the pertinent issue before this Court is NOT the availability of appointed or requested military counsel, but rather, whether an established attorney-client relationship was invalidly terminated, or its continuance frustrated, by the government thereby resulting in a denial of due process.

"The accused's right to be represented by appointed defense counsel, or when the accused so desires, counsel of his choice, is a fundamental principle of military due process. Article 38(b), UCMJ; United States v Murray, 20 USCMA 61, 42 CMR 253 (1970). It is generally conceded that the accused's right to military counsel of his own choice is not absolute; the convening authority has the discretion to determine whether counsel is reasonably available for assignment, and such determination of nonavailability is subject to review for abuse

of discretion. United States v Vanderpool, 4 USCMA 561, 16 CMR 135 (1954); United States v Cutting, 14 USCMA 347, 34 CMR 127 (1964).

"However, in this case the attorney-client relationship had been firmly established by Captain Provine acting as the accused's defense counsel before the Article 32 investigation proceedings, at the taking of a pretrial deposition, and advising the accused during important pretrial matters including critical psychiatric evaluations and request for speedy trial. This relationship was more formally cemented when the case was originally referred to trial by the CG, FLC, in Danang, with Captain Provine appointed as military defense counsel.

"We do not believe that that attorney-client relationship was severed by the government's action in withdrawing the charges and referring the matter to the CG, MCB, Quantico, for disposition. Once entered into, the relationship between the accused and his appointed counsel may not be severed or materially altered for administrative convenience. United States v Murray, supra; United States v Tellier, 13 USCMA 323, 32 CMR 323 (1962). The right to counsel is a basic right, and cannot be manipulated in the name of expeditiousness without endangering that right to the status of an empty formality. Circumstances which would justify the denial of the services of an appointed or requested defense counsel on the basis of *nonavailability*, may not necessarily justify denial of the aid of counsel who has *established* a bona fide attorney-client relationship and has engaged actively in the preparation and pretrial strategy of a case.

"We do not impute bad faith to anyone connected with these proceedings; it appears from the record that all parties to the trial proceeded on the assumption that the decision was one merely based on 'nonavailability' of counsel, rather than one of an *established* attorney-client relationship.

Although the accused had the benefit of individual civilian counsel as well as additional appointed military counsel, we must take note that Captain Provine was the only defense attorney who had been on the scene of the crime and personally knowledgeable of pretrial events occurring in the Far East. Even though the facts of the crime itself were uncomplicated, the main thrust of the defense was based upon the mental condition of the accused, and Captain Provine by reason of his prior experience with the case is presumed to be the only source for the defense team who could accurately gauge the credibility and validity of evidence on matters relating to the events which transpired in Danang. Appointed military defense counsel is a valuable part of the defense team, and there are cogent reasons which may lead an accused to request that he be associated with civilian defense counsel. See Chief Judge Quinn's dissent in United States v Tellier, supra, p. 329.

"Under the circumstances of this case, we find prejudice in the government's frustration of the continuance of a proper attorney-client relationship, and such action constitutes a denial of due process. Article 38(b), UCMJ. We believe the accused should be afforded the services of his military defense counsel, Captain Provine.

"Accordingly, the findings of guilty and the sentence are disapproved. A rehearing may be ordered."

The Government contends at this level that the holding of the Court of Military Review totally ignored this Court's opinion in United States v Massey, 14 USCMA 486, 34 CMR 266 (1964), and represented an unwarranted extension of the principles enunciated in United States v Murray, 20 USCMA 61, 42 CMR 253 (1970), and United States v Tellier, 13 USCMA 323, 32 CMR 323 (1962). Appellate defense counsel argue that *Massey* is readily distinguishable both on its facts and on the precise issue before this Court. In addition, they argue, Massey

**338**

was not on trial for his life as was this appellant.

*Massey* was certified to this Court for review of the correctness of the determination by a board of review that Massey was prejudiced by denial of an application to continue the trial until requested military counsel could return from emergency leave. In *Massey,* Captain Santos was specifically requested by the accused to defend him. Santos represented the accused at the Article 32 investigation and actively pursued other duties in the accused's behalf. On May 6, 1963, charges were formally referred for trial to a general court-martial. Captain Santos was appointed defense counsel and First Lieutenant Roberts as assistant defense counsel.

A week later, Massey retained civilian counsel, Mr. Busscher. Thereafter, and over the next three weeks civilian counsel held at least eight lengthy telephonic conversations and one personal conference with Santos. Lieutenant Roberts did not participate in these conferences and knew little about the case.

On June 7, the convening authority created a new general court-martial which encompassed *Massey's* case. Lieutenant Roberts was designated defense counsel for this case. Captain Santos telephoned Lieutenant Roberts, told him of the substitution, and indicated that the change occurred because Santos' father was seriously ill and he had to go home on emergency leave. Civilian counsel did not object to Santos' emergency leave but emphasized that he would object to the continuation of the trial in Santos' absence. On June 11, Massey, in writing, requested a delay of the trial until June 24 in order that Captain Santos would be present. The convening authority denied the request.

At trial, civilian counsel "asked that the case be continued until after Captain Santos' return to duty only because it was 'highly unfair' to compel the accused to go to trial without his specifically requested military coun-

sel." (*Id.*, at page 489.) The law officer denied the motion.

The board of review, relying on *Tellier*, supra, concluded that the law officer abused his discretion in denying the motion for a continuance. A majority of this Court disagreed and distinguished *Tellier* on its facts. (See comparison of *Tellier* and *Massey*, 14 USCMA, at pages 489–490.) In reversing the board of review, the majority of this Court noted, among other things, that "neither civilian counsel nor appointed military counsel indicated . . . that Captain Santos had *knowledge or information about the merits or procedure which he did not possess*." (Emphasis supplied.) (*Massey*, supra, at page 490.)

Despite the other obvious similarities between *Massey* and the case at bar, several matters serve to distinguish the cases. The first is that this accused was on trial for his life while Massey faced only a term of years in confinement. The second concerns the extent of Captain Provine's involvement in the pretrial activities in Vietnam which began a day or two after the alleged offenses were committed (January 22, 1969) and continued until at least the middle of June when a request was made for the appellant's return to the United States for further psychiatric evaluation. Provine's activity and knowlege of the case was obviously intimate, extensive, and exclusive. Civilian counsel never journeyed to Vietnam.[2] According to the Government's brief, when a request was made on August 20 to change venue to the United States "32 of 36 prospective witnesses were no longer in Vietnam." Therefore, the magnitude of Captain Provine's pretrial involvement is apparent. His past participation gave him a unique knowledge of the case which no one else on the defense team possessed.

Thirdly, the appellant preferred the services of Captain Provine. As early as March 3 when the appellant learned that his parents had engaged Mr. Arch as civillian counsel the appellant executed a statement (Appellate Exhibit 10) in which he expressed a preference for Captain Provine and stated that he did not desire Mr. Arch to come to Vietnam to represent him.

As a fourth item, we note that Captain Provine's assignment to Camp Pendleton was for the convenience of the Government and not because of a problem personal to defense counsel as in *Massey*. Cf. United States v Murray, supra.

We believe that the Court of Military Review correctly determined that the appellant was improperly denied the services of his personally selected military counsel. *Under the circumstances of this case,* something more than unavailability of counsel because of workload was necessary before *this* attorney-client relationship could be validly terminated. We agree with the lower court's determination that:

". . . Circumstances which would justify the denial of the services of an appointed or requested defense counsel on the basis of *nonavailability,* may not necessarily justify denial of the aid of counsel who has *established* a bona fide attorney-client relationship and has engaged actively in the preparation and pretrial strategy of a case."

In United States v Murray, supra, this Court held that an accused may not be deprived of the services of his *appointed* defense counsel, without his consent, simply because of a routine change of assignment. See also United States v Tellier, supra. Cf. United States v Tavolilla, 17 USCMA 395, 38 CMR 193 (1968). It goes without saying that the same can be said with reference to personally selected military counsel. Cf. United States v Andrews, 21 USCMA 165, 44 CMR 219 (1972). This does not mean that once an attorney-client relationship has been established, it may not be dissolved *for good cause.* To the contrary, we have

---

[2] Trial was originally scheduled for June 19–21, 1969. It can be presumed that Captain Provine had already completed most of the pretrial preparation as of that time.

already so held. United States v Massey, supra. What it does mean is that the right to counsel (see also Article 38(b), Uniform Code of Military Justice, 10 USC § 838) may not be lightly interfered with. While it may put a financial, logistical, and administrative burden on the Government to guarantee this right, it is the duty and obligation of the Government to shoulder that burden where possible. Slight expense or inconvenience is not an excessive price where such a legal right is concerned.[3] For an example of serious concern by the Government and the military judge over an accused's right to counsel of his choice, see United States v Kinard, 21 USCMA 300, 45 CMR 74 (1972).

The certified question is answered in the affirmative.

Chief Judge DARDEN and Judge QUINN concur.

---

[3] We were informed by defense counsel in their brief-that three psychiatrists and one psychologist from the United States Naval Hospital, Yokosuka, Japan, were present at trial, as potential Government witnesses, although only one of them testified. Other Government witnesses came from California, Georgia, North Carolina, and Rhode Island.