UNITED STATES, Appellee

v

RALPH W. TIMBERLAKE, Private First Class, U. S. Army, Appellant

22 USCMA 117, 46 CMR 117

No. 25,528

February 2, 1973

*Captain David D. Knoll* argued the cause for Appellant, Accused. With him on the brief were *Miss Ann Wagner, Colonel Arnold I. Melnick,* and *Captain Mark L. Tuft.*

*Captain Ronald A. Cimino* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Glenn R. Bonard,* and *Captain Richard L. Menson.*

## Opinion of the Court

Quinn, Judge:

Laughter at the accused's claim that he could run 100 yards in 8 seconds and a succeeding dispute over his right to use a bunker at Loading Zone Central, in Vietnam, resulted in the accused's trial and conviction on two charges of assault by pointing a M-16 rifle and one specification of assault with a means likely to inflict grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928 (Charge I and its specifications) and a charge of assault with intent to murder, in violation of Article 134, Code, supra, 10 USC § 934 (Charge II and its specification). The primary contention on this appeal is that the accused was denied representation by military counsel of his own choice, as authorized by Article 38, Code, supra, 10 USC § 838.

During the pretrial proceedings, the accused was exceedingly cautious in his contacts with counsel appointed to represent him. Apparently, he preferred representation by a lawyer other than those on the legal staff of his division. Through his first appointed counsel, Captain Hergen, he requested, but was denied because of their unavailability, two Marine Corps officers; he also explored the possibility of retaining a prominent civilian attorney from the United States, who was expected to be in Vietnam in connection with another matter. Eventually, the accused requested, and was assigned, Captain Robert C. Markham, a member of Corps, not the division.

Captain Markham's assignment was made in mid-June 1970. By that time, the Article 32 investigation had been completed and the charges had been referred to trial before a general court-martial, with Captain Hergen as the appointed defense counsel. During this period, Captain Hergen had apparently represented the accused on the understanding that he would not be defense counsel at trial. His active participation seems to have ended

**22 USCMA 118**

in May, but he was formally replaced by Captain Gisla on June 6. With Captain Markham's appearance in the case, Captain Gisla was officially designated assistant defense counsel. However, according to him, and it is not disputed by the accused on this appeal, he was "always" regarded as "the assigned defense counsel."

The full extent of Captain Markham's active participation as defense counsel is not detailed. It does appear that in either June or early July he attended the taking of the deposition of a prospective Government witness, Fred Davis, who was expected to leave Vietnam. Trial was scheduled for July 30. Since Markham was not only officially designated but also acting as counsel, we can assume that he familiarized himself with the evidence in the case. However, the case did not come to trial as scheduled.

About 5:00 p. m. on July 29, Captain Markham and the accused appeared for the taking of the deposition of Caldwell, another prospective witness who was expected not to be available for the trial. According to the accused, he had strongly objected to the Davis deposition, and he now objected to the Caldwell deposition. It appears that as a result of the decision in United States v Davis, 19 USCMA 217, 41 CMR 217 (1970), Government counsel had been pressing for a commitment from the defense that it would not object to use of the Davis deposition at the trial. Evidently Captain Markham was agreeable, but the accused refused, and he took the same position in regard to the Caldwell deposition. As a result, Government counsel abandoned the taking of Caldwell's deposition, and indicated that he would apply for postponement of the trial so that he could bring Davis back to Vietnam for the trial.

Accused's conduct in regard to the depositions precipitated disagreement with Captain Markham. According to testimony of the reporter for Caldwell's deposition, which was received

during the trial judge's inquiry into the accused's understanding of his right to counsel, Captain Markham told the accused at the Caldwell meeting that "there was no longer an attorney-client relationship between" them and "he could no longer represent" him. The accused admitted that Markham "might have made some statement to that effect." He also admitted that Markham told him that he "would probably be gone" from the country, if the trial was postponed. Nevertheless, he "felt" that since Markham represented him at the Davis deposition, "he should represent . . . [him] in . . . . [his] trial and therefore . . . [he] felt that . . . [he] could not release him as . . . defense counsel because he knew too much about . . . . [his] case."

Immediately on breakup of the meeting for the Caldwell deposition, Captain Gisla wrote to Government counsel to advise that the "Defense" was prepared to go to trial "on the day scheduled" and that any delay would "be considered . . . a flagrant and unconscionable denial of Private Timberlake's right to a speedy trial." Gisla signed the letter as defense counsel.

Although the evidence is sketchy, it may fairly be inferred that, after the aborted Caldwell deposition, Captain Markham did not act further in the case. It may also be fairly inferred that neither the accused nor Captain Gisla made any effort to repair the rupture between the accused and Captain Markham and have Markham reconsider his decision to withdraw as counsel. On August 23, Captain Markham departed Vietnam for a new duty station in the United States. Two days later, he was formally relieved as designated defense counsel and Gisla was again constituted appointed defense counsel.

At trial, the accused asserted that he "wished to be represented here" by Captain Markham. However, he made no request for a continuance to enable him to apply for Captain Markham's reassignment as counsel. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 48*b*. Instead, he asserted that the Government left him "not much choice" but to be represented by Captain Gisla. Reminded by the trial judge that he could still have "an individual military counsel of . . . [his] own selection if reasonably available," he replied "Well, I have to accept Captain Gisla, who the Government gave me."

Appellate defense counsel perceive the issue as usurpation by the trial judge of the prerogative of Captain Markham's commanding officer to determine Markham's availability to serve as individual counsel for the accused. See MCM, supra, paragraph 48*b*; United States v Cutting, 14 USCMA 347, 34 CMR 127 (1964). As Captain Markham had actually established a viable attorney-client relationship with the accused, the real issue is whether that relationship was properly terminated before trial. We have considered that question in a number of cases. United States v Eason, 21 USCMA 335, 45 CMR 109 (1972) is perhaps most instructive under the circumstances of this case. We noted there that an accused could not, without his consent, be denied the continued services of an appointed defense counsel who has acted in the case "because of a routine change of assignment;" we went on to point out that "the same could be said with reference to personally selected military counsel." We specifically recognized that the relationship could "be dissolved *for good cause*." 21 USCMA at 339, 45 CMR at 113.

■ Here, the accused and Captain Markham apparently had deep-seated and persistent differences of opinion as to defense tactics. The differences were evident in regard to the very first appearance by Captain Markham in the accused's behalf, specifically the Davis deposition, and were so exacerbated by the time of the Caldwell deposition, that Captain Markham was led to inform the accused that "he

could no longer represent" him. The fair inference from Captain Gisla's letter insisting upon trial on July 30 is that the accused accepted the rupture and was prepared to go to trial without Markham. Also, although at trial, the accused represented that Captain Markham was especially informed about the case, the record indicates his direct participation was limited to the Davis deposition and to the aborted Caldwell deposition. Consequently, in contrast to the kind of involvement of counsel we encountered in the *Eason* case, Markham's participation was not such as to give him "a unique knowledge of the case which no one else on the defense team possessed." United States v Eason, supra at 339, 45 CMR at 113. If any of the lawyers who acted for the accused possessed such knowledge, it was probably Captain Gisla. He was accused's counsel for weeks before Captain Markham came into the case, and immediately upon the collapse of the Caldwell deposition proceedings and Captain Markham's declaration that he could no longer represent the accused, he wrote to trial counsel to advise him the "Defense" was prepared for trial the very next day. Earlier, he had written to trial counsel to request for the defense the presence of a transferred witness. In that letter he indicated that the "defense" [which in context implied action that he personally had taken] had interviewed the witnesses at the Article 32 investigation and had determined that their statements were "very inaccurate as to essential matters." Thus, the record demonstrates that good cause existed for Captain Markham's release as defense counsel for the trial. As the accused made no request of the convening authority, as required by the Manual, for reassignment of Captain Markham as individually selected counsel, apparently even he recognized that not only would such action be inconsistent with his contention that postponement of the trial would deny him the right to a speedy trial, but that Captain Markham would oppose reassignment because of the disagreement between

22 USCMA 120

them. In the circumstances disclosed by the record, we conclude that the retention of Captain Markham as defense counsel was not required. See United States v Massey, 14 USCMA 486, 34 CMR 266 (1964).

With Captain Markham removed, the accused still had the right to select other military counsel. The trial judge recognized that right, and expressly reminded the accused that he could request individual military counsel. The accused refused to exercise the right. On the record, therefore, he was accorded, not denied, the right to select individual military counsel, to act either alone or in conjunction with Captain Gisla, the appointed defense counsel.

In a second assignment of error, the accused contends that he is entitled to a rehearing of the sentence. The primary aspect of his complaint about the sentence proceedings below is that, on modifying certain of the findings of guilty, the convening authority should have directed a rehearing of the sentence by a court-martial, rather than reassess it himself, as he did.

Substantial discretion is allowed a reviewing authority in determining whether, as a concomitant to corrective action as regards the findings of guilty, he should order a rehearing of the sentence by the court-martial or reassess the sentence himself. See United States v Zunino, 15 USCMA 179, 35 CMR 151 (1964). Each of the two specifications of assault of which the accused was convicted by the court-martial authorized confinement for three months; the specification of assault with means likely to inflict grievous bodily harm permitted confinement for three years; and the specification of assault with intent to commit murder authorized confinement for twenty years. Consequently, the court members were instructed that the total authorized confinement was $23\frac{1}{2}$ years. They adjudged confinement for five years. On review, the staff judge advocate advised the convening authority that an error in the instructions as to the offense of as-

sault with intent to commit murder was committed, and, therefore, the court-martial's findings thereon had to be set aside, but the instructions and evidence were sufficient to justify approval of the lesser included offense of assault with a dangerous weapon. The maximum confinement for the lesser offense is three years. The staff judge advocate further noted that the recommended change in the findings of guilty reduced the maximum authorized confinement from 23½ years to 6½ years. He recommended reassessment of the sentence by the convening authority, and proposed that the confinement imposed by the court-martial be reduced to four years. The convening authority acted in accordance with these recommendations.

If nothing more appeared in the record, we might be inclined to accept the convening authority's determination of the forum for reassessment as being within the limits of his discretion, despite our own disposition to regard reassessment by a court-martial, the "primary" sentencing authority, as more appropriate. See United States v Voorhees, 4 USCMA 509, 531, 16 CMR 83, 105 (1954). Compare United States v Zunino, supra, and United States v Christopher, 13 USCMA 231, 236, 32 CMR 231, 236 (1962) with United States v LeBlanc, 19 USCMA 381, 382, 41 CMR 381, 382 (1970). There is, however, another circumstance affecting the sentence that went unnoticed by the convening authority, but which must be considered.

■ As noted earlier, the staff judge advocate advised the convening authority that the total confinement for the approved offenses was 6½ years. That period is correct only if the assault with a means likely to produce grievous bodily harm, alleged in specification 3, Charge I, is separately punishable from the assault with a dangerous weapon offense approved under Charge II. However, it compellingly appears, on examination of the allegations of the respective specifications and the evidence pertaining

to them, that the overt act set out in each specification was part of the same assault. The specification of Charge II alleged that the accused shot Sergeant Davis; specification 3, Charge I, alleged that he kicked Davis in the body with force likely to produce grievous bodily harm. The supporting evidence is to the effect that the accused "brought . . . [his] weapon up and it went off," the bullet struck Davis in the hip; he then "sort of fell down . . . and PFC Timberlake started kicking him in the back" and "side of the head." Patently the two acts are sequential and integral parts of a single assault; as such, they are not separately punishable. United States v Scott, 16 USCMA 478, 37 CMR 98 (1967). Thus, the staff judge advocate erred in his advice to the convening authority as to the maximum punishment for the offenses approved by him, and further corrective action as to the sentence is required. We are, therefore, free to exercise our own judgment as to the appropriate forum for redetermination of the sentence. In view of the additional disparity between the period of confinement considered by the court-martial and that to which the accused is legally subject, we conclude that the sentence should be "redetermined by a court-martial." United States v LeBlanc, supra; United States v Voorhees, supra.

The decision of the Court of Military Review as to the sentence is reversed. A rehearing of the sentence by a court-martial may be had.

Chief Judge DARDEN concurs.

DUNCAN, Judge (concurring in part and dissenting in part):

I agree with the statement in the majority opinion that: "As Captain Markham had actually established a viable attorney-client relationship with the accused, the real issue is whether that relationship was properly terminated before trial."

As I view the record, Captain Markham declared himself unavailable to represent Timberlake. There is no

provision in law that provides authority for such a unilateral cessation of a military attorney-client relationship. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 46*b*, provides in part:

". . . A report of facts will be made at once to the convening authority for his appropriate action when it appears to the court or to the defense counsel that any member of the defense named in the convening order is for any reason, including unfitness, . . . hostility toward the accused, . . . unable properly and promptly to perform his duties in any case."

I am well aware that Captain Markham was an individually selected defense counsel; however, regarding his disqualification prior to trial, I believe paragraph 46*b* of the Manual sets the tone of the role of the convening authority in the disqualification of defense counsel. Logic would be hard to find that would justify individually selected military defense counsel being free to dissolve an attorney-client relationship without seeking authority to do so when detailed defense counsel must. As I view it, before trial a convening authority has the duty of determination of when an attorney is reasonably available and qualified both before and after the attorney-client relationship begins. See paragraph 48*b*, Manual, supra.

Under these circumstances, I find no duty upon appellant, as the Government contends, that prior to trial he should have communicated his interest in Captain Markham's continued representation.[1] I believe that Captain Markham's duty was to represent the appellant until he was properly relieved of this duty.

Differences of opinion regarding the conduct of pretrial and trial matters, indeed, are not rare. There are some differences that are so deep that the attorney-client relationship should be dissolved by the proper authority. But a dispute such as this record reveals sets a low mark to pass in order to justify the inability for an attorney to provide an effective defense for his client.

In the instant case, I do not question the professional ability, familiarity with the case, or the dedication of Captain Gisla; however, the appellant has the right to have selected military defense counsel, if his selectee is available.

Facing the Hobson's choice of going to trial without his selected defense counsel or spending more time in an already long period of pretrial confinement, in my opinion, is not a willing consent to Captain Gisla's representation.[2] Moreover, appellant's failure to exercise the option presented to him at trial to select another defense counsel does not amount to his consent to proceed without Captain Markham. Appellant is entitled to his first selection of counsel, if available and not disqualified. The

[1] The appellant contends that Captain Markham left Vietnam on August 23, 1970, and that on August 25, 1970, he first learned that he had gone and would not be present to represent him. He was brought to trial August 26, 1970. This Court has held that a routine change of assignment does not amount to unavailability. United States v Murray, 20 USCMA 61, 42 CMR 253 (1970).

[2] Timberlake testified:
"Well, sir, the government leaves me not much choice but to be represented by Captain Gisla and my failure to accept Captain Gisla would only put me in a situation that makes it almost forcible that I accept Captain Gisla because I have been in pretrial confinement for such a long time and the government has postponed my trial and ordered that I be placed in this situation and there is nothing that I can do but accept Captain Gisla because another lawyer would cause me another two or three months in pretrial confinement plus violating my request that I be brought to trial."

See also United States v Cutting, 14 USCMA 347, 351, 34 CMR 127, 131 (1964).

failure to make a second choice does not divest him of the right to his first choice.

The facts of record in this case are basically different than those before us in United States v Kinard, 21 USCMA 300, 45 CMR 74 (1972), where we held that the military judge did not abuse his discretion in denying a continuance to enable the accused to obtain civilian counsel where the accused had seven military counsel assigned or offered, all of which he rejected. Kinard was offered assistance in obtaining civilian counsel. He had also received two prior continuances to obtain civilian counsel.

We are not faced here with the situation where an attorney has moved the court to withdraw and presented reasons for his request. I believe at trial a military judge has the power to determine this matter. Unlike the military judge in the case at bar who stated, "There is no evidence that Captain Markham abandoned the client because of specious or fickle reasons and I will not presume that that is so unless there is evidence to the contrary," my opinion is that the relationship can only be ended by a showing of good cause rather than the presumption of good cause. See United States v Cutting, 14 USCMA 347, 34 CMR 127 (1964).

I would authorize a limited rehearing to determine whether there are differences between Captain Markham and appellant which would prevent his effective representation of Timberlake.

I concur in the judgment of the majority that the staff judge advocate erred in his advice to the convening authority as to the maximum punishment for the offenses approved by him, and that the sentence should be redetermined by a court-martial.