UNITED STATES

v.

**Frank E. POLK, 262 13 4890, Seaman Apprentice (E–2), U. S. Navy.**

**NCM 76 0195.**

U. S. Navy Court of Military Review.

Sentence Adjudged 19 June 1974.

Decided 27 Aug. 1976.

LCDR T. D. Keating, JAGC, USN, Appellate Defense Counsel.

LT Michael C. Farrow, JAGC, USNR, Appellate Government.

Before EVANS, MALLERY and GREGORY, JJ.

GREGORY, Judge:

Appellant was convicted in a special court-martial bench trial of numerous offenses in violation of Articles 80, 86, 91, 92, 95, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 886, 891, 892, 895, 928. He was sentenced to a bad conduct discharge, confinement at hard labor for four months, forfeiture of $175.00 per month for four months, and reduction to pay grade E–1. Intermediate reviewing authorities have approved the sentence without modification.

Appellant has assigned the following errors before this Court:

I. THE APPELLANT'S REQUESTS FOR AN INDIVIDUAL MILITARY COUNSEL WERE IMPROPERLY DENIED.

II. CHARGE I AND THE SPECIFICATION THEREUNDER ALLEGING AN ATTEMPTED ASSAULT WITH A DEADLY WEAPON FAILS TO STATE AN OFFENSE.

We do not concur in the assignments of error, and we affirm.

I.

Prior to trial, appellant submitted two requests dated 15 April 1974 and 10 May 1974 to the Commandant Fifth Naval District that Lieutenant Henry T. Wingate, JAGC, USNR, be made available to serve as his individual military counsel (Appellate Exhibits II, IV). For reasons which are not entirely clear, these requests never reached the attention of the Commandant and were not acted upon. The request for Lieutenant Wingate's services was finally acted upon and denied on 17 June 1974, the first day of actual trial, by Captain Kenneth K. Bridges, JAGC, USN, Officer in Charge, Naval Legal Service Office, Norfolk, Virginia (Appellate Exhibit VII). The record of trial reveals that Lieutenant Wingate was administratively transferred from the Staff of Commandant Fifth Naval District to Naval Legal Service Office, Norfolk, on 15 May 1974, upon the establishment of this latter activity (R. 28).

At trial, appellant again raised the issue of Lieutenant Wingate's availability and the issue was fully litigated. The issue to be decided by this Court, therefore, is whether Captain Bridges abused his discretion in determining that Lieutenant Wingate was not reasonably available. *United States v. Cutting*, 14 U.S.C.M.A. 347, 34 C.M.R. 127 (1964); *United States v. Gatewood*, 15 U.S.C.M.A. 433, 35 C.M.R. 405 (1965).

■ An accused's right to counsel of his own choice, if reasonably available, is mandated both by the Code and the Manual. *See* Article 38(b), UCMJ, and Paragraph 48,

MCM, 1969 (Rev.). Although this right to individual military counsel is one to be zealously safeguarded, *United States v. Donohew*, 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969), the right is less than absolute. As noted above, it must be conditioned on the determination of reasonable availability. In *United States v. Cutting, supra*, where the counsel requested was under the command of the convening authority, the Court of Military Appeals addressed the question of reasonable availability as follows:

"The question is one requiring the exercise of the convening authority's discretion in light of all the circumstances, including the duties assigned the requested officer, military exigencies, and similar considerations—in short, 'a balance between the conflicting demands upon the service,' *Henry v. Hodges*, supra, at page 403, or, to paraphrase the statute involved, a sound reason for denying to the accused the services of the representative whom he seeks." [*United States v. Cutting*, 14 U.S.C.M.A. at 351, 34 C.M.R. at 131].

■ Both Captain Bridges and Lieutenant Wingate testified at trial. Lieutenant Wingate indicated that prior to returning to the Naval Legal Service Office about two weeks previously he had maintained an office at the Naval Station, Norfolk, where he functioned as a defense counsel in special courts-martial. He stated that he had between 70 and 90 cases assigned when the first request for his services was made. He still had approximately 50 of these Naval Station cases pending when he returned to the Naval Legal Service Office. In addition, he was now assigned as counsel in one Article 32 investigation and five pending special courts-martial at other commands. Despite this workload, Lieutenant Wingate testified that not all of these cases would eventually come to trial and he believed he could have acted as individual military counsel for appellant without significant difficulty [R. 14–18].

On the other hand, Captain Bridges testified that a trial backlog existed at the Naval Legal Service Office, and he had

initiated a campaign to expedite trials and reduce this backlog. He estimated that the "average" defense counsel in his office would have approximately 20 cases assigned at any particular time. Captain Bridges indicated that he evaluated Lieutenant Wingate's current workload at the time the request for Lieutenant Wingate's services came into the office and determined that based on this workload and the campaign to expedite the processing of cases it would not be in the best interest of either this appellant or Lieutenant Wingate to make Lieutenant Wingate available [R. 26–27].

We recognize the discrepancy in the testimony of the two witnesses and the viewpoint of Lieutenant Wingate that he would have been reasonably available. However, in the past this has not been held to be a determining factor. *See United States v. Paul*, 46 C.M.R. 421 (A.C.M.R.1972); *petition denied* 46 C.M.R. 1324; *United States v. Barton*, 48 C.M.R. 358 (N.C.M.R.1973). We further recognize that in *United States v. Quinones*, 23 U.S.C.M.A. 457, 50 C.M.R. 476, 1 M.J. 64 (1975), the requested counsel also considered himself reasonably available and the Court of Military Appeals found error in excessive reliance on a rigid formula, that is a 40-hour workweek, in determining the counsel's availability. We would note, however, that the Court in *Quinones* found that the counsel in question did not actually have a heavy backlog of work.

Examining all the evidence on this issue, we find cause for Captain Bridges' genuine concern over elimination of the existing backlog of pending cases. We also find that assignment of Lieutenant Wingate to appellant's case, which involved a considerable number of alleged offenses and several convoluted issues, would undoubtedly have operated to the detriment of Lieutenant Wingate's other clients and would not have contributed to the "orderly administration of military justice" in the Norfolk area. *See United States v. Vanderpool*, 4 U.S.C.M.A. 561, 566, 16 C.M.R. 135, 140 (1954).

Under the circumstances of this case, we can find no abuse of discretion on the part of Captain Bridges. The assignment of error is without merit.

II.

In the specification under Charge I, appellant was charged with an attempted assault with a dangerous weapon against Patrolman Swoveland of the Naval Station Norfolk Base Police. The evidence reveals that Patrolman Swoveland had been called to the Naval Station Galley when appellant refused to produce his identification card upon request. Patrolman Swoveland eventually placed appellant under apprehension, handcuffed him, removed him from the galley, and placed him on the passenger side of the front seat of the police truck. Patrolman Swoveland testified that, as he entered the truck on the driver's side, appellant reached over and grabbed the butt of the revolver in a holster on Patrolman Swoveland's right hip. Patrolman Swoveland struck appellant's arm with his nightstick to prevent the appellant from removing the revolver from the holster.

Appellant contends that such actions, giving the fullest possible weight to the government's evidence, constitute mere preparation and would support, at best, a charge and conviction of a simple battery. We do not agree.

Paragraph 159, MCM, 1969 (Rev.), dealing with attempts, provides as follows:

"To constitute an attempt there must be a specific intent to commit the particular offense accompanied by an overt act which directly tends to accomplish the unlawful purpose. The overt act must be more than mere preparation to commit the offense. Preparation consists in devising or arranging the means or measures necessary for the commission of the offense. The overt act required goes beyond preparatory steps and is a direct movement toward the commission of the offense. *However, the overt act need not be the last proximate act to the consummation of the offense attempted to be perpetrated.*" [Emphasis supplied.]

We concur in the government's contention that the grabbing of the revolver by

the appellant was the beginning of a series of integrated acts which would effect the ultimate offense of assault with a dangerous weapon [Government brief at 6]. The actions of appellant constituted considerably more than devising or arranging the means or measures for committing an offense. The grabbing of the revolver would have led directly to the consummated assault, except for the apparent difficulty in removing the revolver from the holster [R. 75] and the intervening act of Patrolman Swoveland in striking appellant's arm. We find that appellant was properly charged and convicted of the alleged assault with a dangerous weapon.

Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed.

Senior Judge EVANS and Judge MALLERY concur.