**UNITED STATES**

v.

**Billy R. WARE, Jr. 451 86 8373 Seaman (E–3) U.S. Navy.**

**NCM 74 3371.**

U. S. Navy Court of Military Review.

30 April 1975.

MAJ D. A. Higley, USMC, Appellate Defense Counsel.

LT J. W. Malley, Jr., JAGC, USNR, Appellate Government Counsel.

**DECISION**

CEDARBURG, Chief Judge:

Tried by general court-martial, appellant was convicted, upon his plea of guilty, of a single specification of larceny of $8,677.00 of ship's store funds of the USS Franklin D. Roosevelt (CVA–42), in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The sentence of the military judge extended to a bad conduct discharge, confinement at hard labor for 8 months, forfeiture of all pay and allowances for 8 months and reduction to pay grade E–1. The convening authority approved only the bad conduct discharge, reduction to pay grade E–1, and forfeiture of two-thirds pay per month for six months.[1] He suspended the bad conduct discharge for a period of twelve months from the date of his action on 21 November 1974.

Prior to pleading, the military judge granted a defense motion to dismiss for a denial of speedy trial. The trial counsel successfully sought a reversal of the ruling from the convening authority and the record was returned to the court-martial pursuant to Article 62, UCMJ and Paragraph 67f. Manual for Courts-Martial, United States, 1969 (Rev), directing the trial to proceed. Appellant avers that the convening authority's action was erroneous as a matter of law. Appellant asserts first that the convening authority failed to accept the factual findings of the military judge which were reasonably supported by the evidence and thereby substituted his own judgment. Secondly, he contends that the military judge's grant of the motion was not incorrect as a matter of law nor did it amount to an abuse of discretion so that the failure of the convening authority to sustain the ruling constituted error as a matter of law.

A stipulated chronology (Appellate Exhibit I) accepted by the military judge reveals the following:

---

1. The forfeiture should have been stated in dollars. Paragraph 126(h)(1), Manual for Courts-Martial, United States 1969 (Rev).

| | | | |
|---|---|---|---|
| 18 Oct 1973 | Alleged offense. Accused confesses, money recovered. | 1 Mar 1974 | FDR advises Staff Judge Advocate, COMSIXTHFLT, to forward 32 to COMTACAIRLANT. |
| 25 Oct 1973 | Speedletter requesting counsel. Minimize due to war in Middle East. | 6 Mar 1974 | COMSIXTHFLT mails 32 inadvertently to COMNAVAIRLANT. |
| 30 Oct 1973 | Message requesting counsel for 32 Investigation to NSA Naples. | 19 Mar 1974 | FDR calls COMTACAIRLANT. 32 has not arrived. |
| 31 Oct 1973 | LT Mollison, Investigating Officer, and LCDR Gerken, Defense Counsel, arrive on board in response to earlier request for a trial team to try Special Courts-Martial. | 26 Mar 1974 | FDR again calls COMTACAIRLANT to inquire into status and procedures. |
| | | 27 Mar 1974 | Message to COMSIXTHFLT inquiring as to status drafted and checked with Staff Judge Advocate COMTACAIRLANT. |
| 3 Nov 1973 | Article 32 Investigation. | | |
| 5 Nov 1973 | LT Mollison, and LCDR Gerken depart ship. Command specifically requests that Article 32's be prepared prior to preparation of records of other proceedings which took place in unrelated cases on board. | 28 Mar 1974 | Ship's copies of 32 Investigation delivered to COMTACAIRLANT. Message to COMSIXTHFLT released inquiring into status. |
| | | 19 Apr 1974 | Article 34 advice of approximately 3000 words completed by judge advocate, COMTACAIRLANT. |
| 22 Nov 1973 | Message from FDR requesting status of 32's. | | |
| 23 Nov 1973 | Naval Support Activity Naples advises that they will give estimated date of completion later. | 24 Apr 1974 | Case referred to General Court-Martial by COMTACAIRLANT. |
| 30 Nov 1973 | NSA Naples advises that 32 will be ready 11 December 1973. | 6 May 1974 | FDR arrives in Philadelphia. |
| | | 14 May 1974 | Charges served on accused. |
| 14 Dec 1973 | Article 32 investigation completed in rough, forwarded to Investigating Officer. | 16 May 1974 | LT Dowling first assigned to represent accused. |
| 15 Dec 1973 | Investigating Officer on leave. | 17 May 1974 | LT Dowling first sees accused. Demands immediate trial. Requests LCDR Gerken as counsel. |
| First week of Jan 1974 | Investigating Officer returns from leave, proofreads rough 32 and returns for corrections. | 5 Jun 1974 | Trial set for the week of 24 June. |
| 9 Jan 1974 | FDR message to Naples inquiring as to status of 32 investigation. | 6 Jun 1974 | Naples message—LCDR Gerken unavailable to serve as counsel. Again requested. |
| 11 Jan 1974 | Naples message to FDR—32 to arrive shortly. | 10 Jun 1974 | CDR Hilligan's services secured as Military Judge. |
| 15 Jan 1974 | Smooth copy of 32 Investigtion mailed to FDR. | 11 Jun 1974 | Naples message—LCDR Gerken unavailable. |
| 22 or 23 Jan 1974 | 32 arrives at FDR. | 21 Jun 1974 | Office of the Judge Advocate General of the Navy requests that LCDR Gerken be made available as counsel. Naples complies. Trial rescheduled until such time as counsel situation is resolved. |
| 27–28 Jan 1974 | FDR Legal Officer, LT King, absent from ship for administrative discharge board, USS SAVANNAH. | | |
| 30 Jan 1974 | 32 forwarded to COMSIXTHFLT. | 25 Jun 1974 | Naples message advised that LCDR Gerken will arrive 26 or 27 June. |
| 5 Feb 1974 | 32 received by COMSIXTHFLT. | 27 Jun 1974 | LCDR Gerken arrives. |

The schedule of Roosevelt (Appellate Exhibit II) disclosed movements from 1 November 1973 to 17 March 1974 as follows:

| | |
|---|---|
| 1–13 NOV 73 | UNDERWAY |
| 14 NOV 73 | ANCHOR SOUDA BAY |
| 14 NOV 73 | UNDERWAY |
| 15–20 NOV 73 | INPORT ATHENS |
| 21–30 NOV 73 | UNDERWAY |
| 1–2 DEC 73 | UNDERWAY |
| 3–12 DEC 73 | INPORT ATHENS |
| 13–18 DEC 73 | UNDERWAY |
| 19–31 DEC 73 | INPORT BARCELONA |
| 1–3 JAN 74 | INPORT BARCELONA |
| 4–13 JAN 74 | UNDERWAY |
| 14–23 JAN 74 | INPORT ATHENS |
| 24–28 JAN 74 | UNDERWAY |
| 29–31 JAN 74 | INPORT THESSLONIKI |
| 1–2 FEB 74 | INPORT THESSLONIKI |
| 3 FEB 74 | UNDERWAY |
| 4–10 FEB 74 | INPORT ATHENS |
| 11–23 FEB 74 | UNDERWAY |
| 24–28 FEB 74 | INPORT PALMA |
| 1–2 MAR 74 | INPORT PALMA |
| 3–4 MAR 74 | UNDERWAY |
| 5 MAR 74 | ANCHOR ROTA |
| 5 MAR 74 | UNDERWAY FOR MAYPORT |
| 17 MAR 74 | INPORT MAYPORT |

Appellant's trial commenced on 1 July 1974 on a single specification of larceny stemming from the theft on 18 October 1973 of $8,677.00 from ship's store funds of the USS Franklin D. Roosevelt. The theft occurred during underway operations in the Mediterranean Sea in support of peripheral involvement of US Armed Forces during hostilities between Israeli and Arab forces. Appellant was identified almost immediately and confessed his guilt to a special agent of the NIS. Charges were preferred on 2 November 1973, the date from which government accountability was correctly calculated. Appellant was never placed under confinement nor was he restricted during any of the period from the commission of the offense until trial actually took place.

In addition to the information supplied in the chronology and operating schedule, the only other information considered by the military judge in deciding the motion was supplied by testimony of the legal officer of Roosevelt. Pertinent portions of his testimony follow in the next 4 paragraphs.

The Article 32 hearing was conducted and completed on board Roosevelt at sea on 3 November 1973 by a trial team from Naval Support Activity, Naples, pressed into service while aboard for unrelated court-martial proceedings.

Transcription of the record of the Article 32 hearing (consisting of 26 pages and 28 exhibits) had to be accomplished by legal support personnel ashore. The senior member of the trial team, who represented appellant at the Article 32 proceedings and at trial, was specifically requested to have the Article 32 record transcribed prior to the other records of proceedings taken on board. Despite the request, the Article 32 investigation was transcribed after the records of two special courts-martial and an administrative board and was received on 22 or 23 January 1974. Message inquiry by Roosevelt was made (22 November 1973 and 9 January 1974) prior to receipt requesting the status of the investigation and advice was received that it was to be completed around 11 December 1973.

Appellant inquired regarding the status of his case on 4 occasions prior to trial, twice before receipt of the investigation, once after receipt of the investigation while Roosevelt was deployed in the Mediterranean and once after her return to the United States.

The record of investigation was received by Commander, Sixth Fleet, the then cognizant general court-martial convening authority, with recommendations from the Commanding Officer of Roosevelt on 5 February 1974, approximately 1 month before Roosevelt was scheduled to and did detach from Sixth Fleet for the United States. On 1 March 1974, Roosevelt's legal officer conferred with the staff legal officer of Commander, Sixth Fleet aboard USS Little Rock during a port call at Palma Majorca and suggested, in view of the anticipated departure, that the record be forwarded to the general court-martial convening authority at Roosevelt's home-port.

The military judge in granting the motion for dismissal made extensive comments which included factual determinations. In

returning the record and directing the trial to proceed, the convening authority stated that certain facts as found by the military judge were not reasonably supported by the evidence. Appellant complains that while ostensibly advancing reasons why the military judge's findings of fact were not reasonably supported by the evidence, the convening authority impermissibly made findings of fact, thereby substituting his judgment for that of the judge.

■ Significantly, the convening authority further stated, after questioning whether certain facts were reasonably supported, "Notwithstanding the above, it is determined that the facts *as found* by the military judge do not justify the judge's ruling as a matter of law." (Emphasis added) Thus, irrespective of any resolution of whether the convening authority improperly made findings of fact, the convening authority determined that, even accepting the facts as found by the military judge, the ruling was incorrect as a matter of law. The convening authority was entitled to do so subject to appellate review of the record of conviction. *United States v. Frazier*, 21 U.S.C.M.A., 45 C.M.R. 218.

■ The ultimate issue in this case is whether, as a matter of law, the military judge's ruling was incorrect thereby justifying the reversal of his ruling by the convening authority. Although we have serious doubts that certain of the findings of fact by the military judge were reasonably supported by the evidence, we will apply them in our resolution of the ultimate issue.

No presumption of denial of speedy trial exists in this case under the law enunciated by *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). Appellant's speedy trial right must be examined by the "less rigorous requirement of the Sixth Amendment to the Constitution." *United States v. Amundson*, 48 C.M.R. 914, 917 (NCMR 1974), aff'd 23 U.S.C.M.A. 308, 49 C.M.R. 598.

Counsel for both appellant and the Government cite the United States Supreme Court case of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) as identifying four related factors which must be applied in a balancing test to determine whether an accused has been deprived of his constitutional right to a speedy trial. These factors are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. Each of these factors, as it applies to appellant's case will be separately discussed. The Court of Military Appeals has endorsed a functional analysis of the facts in each case to determine whether the Government proceeded with reasonable diligence and without deliberate oppression of the accused. *United States v. Amundson*, 23 U.S. C.M.A. at 312, 49 C.M.R. at 602.

### (1) The length of the delay

A 241 day delay, given the almost immediate identification of the appellant as the likely criminal and his confession to the NIS agent, is of sufficient length to trigger inquiry into the other factors of the balance test propounded in *Barker v. Wingo, supra*. The case at bar is a simple larceny and although serious, presented no complex, convoluted issues requiring extensive preparation by the Government. Having concluded that the delay was sufficient to force an inquiry into the other factors, we will examine all of the evidence presented on the motion in the light of the special findings of the military judge to determine if appellant has been denied his right to a speedy trial when ". . . the conduct of both the prosecution and the defendant are weighed." Id. at 530, 92 S.Ct. at 2192.

### (2) The reason for the delay

"Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered . . . ." Id. at 531, 92 S.Ct. at 2192.

We accept the delay from preferment to trial as being solely attributable to the Government in accordance with the special finding of the military judge to that effect. In his comments the military judge made no determination that the events detailed in the chronology and ship's operating schedule or testified to by the legal officer of Roosevelt were not factual or accurate. His analysis of this evidence led him to conclude that the ship's various deployments were not responsible for the delays. For purposes of deciding this case, we accept that particular conclusion of the military judge. We must note parenthetically, that while a ship's deployments may not be directly responsible for delay, logic clearly dictates that the time required to accomplish even relatively simply legal processes is greatly magnified by a ship of the line being underway in view of their forced reliance for legal services on support personnel ashore and physical isolation from ultimate decision makers. While, theoretically, the Government is a single entity that operates in a unitary fashion, theory does not comport with reality in the case of an underway ship even in normal peacetime operations, much less those in support of a mission. There is no direct command link and little opportunity for direct supervision or setting priorities of supporting personnel; and communications by either mail or mechanical means are for the most part indirect, time consuming, and error plagued. The weight to be applied in the balancing test should be governed accordingly for Government responsible delay under those circumstances.

No evidence was adduced of a deliberate attempt by the Government to delay or hamper appellant's case. The initial conduct of the pretrial hearing was commendably expeditious, due in part to the fortuitous availability of a trial team on board for unrelated legal proceedings. The command further attempted to assign a priority to the transcription of the investigation record, a necessary antecedent to command review and recommendation to the cognizant convening authority. In fact, the request for priority handling was directed to the senior member of the trial team, the lawyer who represented appellant at the investigation and trial. The request went unheeded.

Status advisories on the investigation were requested by the command in reasonable time frames upon non-receipt of the investigation on two occasions, once after the hearing was conducted and again, after the estimated date of completion was exceeded. The command's processing of the case after receipt of the investigation was reasonably prompt.

The delay after receipt by Commander, Sixth Fleet was unexplained, and the lack of explanation was properly questioned by the military judge. But it must be recognized that Roosevelt's Sixth Fleet Service was drawing to an end. The command suggestion, communicated by the Roosevelt legal officer to the staff judge advocate of Commander, Sixth Fleet, to forward the case for decision to Roosevelt's stateside convening authority was logical in view of her imminent detachment from the Sixth Fleet. The chronology of events thereafter records some additional errors and administrative procedures prolonging the trial date until the passage of 241 days after preferment of charges. However, it also reveals command effort to follow-up and expedite the progress of the case after it left their direct control and considerable effort at the trial activity and the office of the Judge Advocate General to obtain from Naples appellant's original and requested counsel, to which he was entitled. Some inactivity is revealed. Some ineptitude is also disclosed. And, the distant physical separation of various activities and commands, controlling some aspects of the case, contributed to the delay.

(3) Appellant's assertion of his right

Appellant, through assigned counsel, made formal demand for immediate trial on 17 May 1974. On the same date he also requested counsel who had represented him at the Article 32 investigation and who was still assigned to the Naval Support Activity, Naples. He was legally entitled to be rep-

resented at trial by his originally appointed counsel with whom he had established an attorney-client relationship. *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972). The clear import of the dual demands was that appellant wanted his trial as soon as possible with his specifically requested counsel. The Government acted with diligence in obtaining the requested counsel from Naples despite his busy military justice schedule. Thus he was brought to trial promptly after his formal demand consistent with his desire to be represented by his original lawyer. The military judge, while recognizing that appellant's four inquiries to command representations concerning the status of his case were not formal demands for trial, accorded them some weight. We do likewise but conclude, using a variable scale for different factors, that they are entitled to little weight in the overall assessment of Government negligence.

### (4) Prejudice to the accused

No evidence was presented or found that appellant was impaired by the delay in his defense, the most serious of the 3 forms of prejudice identified by the Supreme Court in *Barker v. Wingo, supra*. Appellant was neither confined nor restricted during the entire period. He was given liberty, performed normal duties, but reasonably enough, was removed from his job as a cash collection agent. Thus, a serious form of prejudice, incarceration, was not suffered by appellant. The military judge presumed, prior to his grant of the dismissal motion that appellant "may well have experienced considerable concern" during the delay. Subsequently, in renewing his motion, appellant presented specific evidence by a psychiatrist that appellant suffered anxiety and depression. Anxiety and concern is the third but least serious type of prejudice which speedy trial seeks to minimize. The evidence indicated a subsidence of appellant's depression in the last six weeks before trial when he realized the matter was moving toward a resolution. A certain amount of anxiety is inevitable incident to any criminal prosecution. We conclude that ". . . appellant did not suffer inordinate anxiety and scorn merely because the trial was delayed." *United States v. Amundson*, 48 C.M.R. 914, 921. We will weigh it with the other factors to determine, if on balance, as a matter of law, appellant was denied his right to a speedy trial.

None of the four factors discussed above are regarded by the Supreme Court in *Barker v. Wingo, supra*. ". . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather they are related factors and must be considered together with such other circumstances as may be relevant." Id. 407 U.S. at 533, 92 S.Ct. at 2193. The delay in this case was lengthy. However, it is clear that appellant was not hampered in his defense nor did he suffer incarceration. Any prejudice experienced was minimal. It consisted of the natural anxiety and depression incident to unresolved charges.

Recognizing that appellant made 4 informal requests regarding the status of his case, there was no formal demand for trial until approximately six weeks before trial commenced. Extensive efforts were made during that period to obtain the lawyer who was requested simultaneously with the demand for trial. Under the circumstances, appellant was brought to trial promptly after his demand for immediate trial.

The delay was not deliberate, a factor which would weigh heavily against the Government. At most the delay attributed to the Government was negligence which should be considered, but weighed less heavily. The potential for negligent actions was increased by the physical separation of the activities and commands controlling different aspects of the case. The potential could be reduced but not altogether eliminated in the case of an underway ship.

There were brief periods of inactivity but also continuing efforts with varying degrees of success by appellant's immediate command to monitor and prod the case to trial.

Balancing all of the factors, we conclude that the evidence considered by the military judge in ruling on the motion for dismissal for denial of speedy trial did not support his grant of the motion, as a matter of law. No purposeful or oppressive design on the part of the Government to delay the trial was disclosed. Although there were opportunities to proceed more expeditiously than was done, there was a sufficient showing that the Government proceeded with reasonable diligence in bringing the charges to trial. *United States v. Parish*, 17 U.S.C. M.A. 411, 38 C.M.R. 209 (1968).

Accordingly, the convening authority's action in returning the case to the military judge directing that he proceed to trial was not erroneous as a matter of law.

The findings and sentence as approved on review below are affirmed.

Senior Judge HOPPE and Judge FULTON concur.