UNITED STATES, Appellee

v

LOUIS P. DYJAK, Lance Corporal, U. S. Marine Corps, Appellant

18 USCMA 81, 39 CMR 81

---

No. 21,196

January 3, 1969

*Lieutenant David E. Miller*, JAGC, USNR, argued the cause for Appellant, Accused.

*Captain William S. Foss*, USMCR, argued the cause for Appellee, United States. With him on the brief were *Colonel C. R. Larouche*, USMC, and *Lieutenant Steven A. Weidner*, JAGC, USNR.

## Opinion of the Court

FERGUSON, Judge:

Tried before a general court-martial, the accused pleaded not guilty to Charge I and its specification of larceny of Government clothing of a value of $1,151.10, and fourteen specifications of Charge II, which include seven specifications of wrongfully making an official writing and seven specifications of wrongfully presenting an official writing, in violation of Uniform Code of Military Justice, Articles 121 and 134, 10 USC §§ 921, 934, respectively. He was convicted of the specification of Charge I with exceptions and substitutions changing, *inter alia*, the value of the property to $992.20, and of the specifications of Charge II as charged. He was sentenced to a bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for six months, and reduction to the lowest enlisted grade. The convening authority approved the sentence but sus-

pended execution of that portion pertaining to confinement at hard labor for six months, forfeiture of all pay and allowances, and a bad-conduct discharge for a period of six months, with provision for automatic remission. The board of review affirmed.

We granted review on three issues, two of which are concerned with Prosecution Exhibits 1–7 and the third with the law officer's instructions on deposition testimony. A brief recitation of the facts is necessary to set the issues in proper perspective.

At the outset of the trial, the prosecution offered into evidence the deposition of a Gunnery Sergeant, Prosecution Exhibit O, to which were attached the exhibits with which we are concerned. These exhibits, referred to as "issue mats" were, in civilian language, invoices for the issuance of clothing and other Government property. The deponent related

82

that the accused had presented these invoices to him for his signature.

Defense counsel objected to the introduction into evidence of these invoices on the ground that they had been obtained without a proper warning under Article 31 of the Code, supra, and in violation of the rules laid down in United States v Tempia, 16 USCMA 629, 37 CMR 249. See also Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966). The law officer overruled the objection.

The testimony of record, bearing directly on this issue, was given by Captain Courtemanche, officer in charge of the Central Clothing Account, and a member of the same supply battalion as the accused. Captain Courtemanche testified that he saw a five-ton truck proceed down the company street and pull up near the supply company. Since the posted weight limit for that road was three-quarter-ton trucks his interest was aroused. When he saw a Marine, later identified as the accused, carry a box, which the Captain knew to be a clothing box, into a hut, he went over to the truck "to check it." There was a Corporal standing in the bed of the truck and there was a driver in the cab. He noticed other clothing boxes in the truck and became "suspicious." He looked into the back of the truck and could not tell "whether it was individual clothing or organizational clothing, such as jungle utilities, . . . but I did recognize them as being clothing boxes in the back—in the bed of the truck. I think I made some remark to the three of them there, 'Where—what are you doing with these clothes?' I made a couple of other remarks and then it kind of dawned on me, I had caught somebody—in my own mind, had caught somebody red handed with these clothes which should never be in a billeting area. So I said—I backed off and gathered up the three of them at the rear of the truck and gave them a warning. I figured that something would be liable to be coming up, it may or may not end up in a court, so I gave them an Article 31

warning, warned them of their rights, under Article 31, warned them of their rights to lawyer counsel." The Captain further testified that he then asked the men collectively " 'where's the issue documents, I want to see the issue documents for this gear.' " He was unable to state who gave him the invoices (issue mats). There were only six invoices (#2–7) handed to him at that time; the seventh (#1) was retrieved from the Storage Activity the following day, it having been retained at the time the material was issued. The clothing was taken to the Captain's office and the three men, who had been temporarily detained, were released.

The appellant testified that he personally handed the invoices to Captain Courtemanche after they had been obtained by the Corporal from the glove compartment of the truck, in response to the Captain's request.

The invoices in question were used by the Government to establish that the property involved was improperly obtained from the Storage Activity as alleged in the specification charging larceny of Government clothing. They were also the subject matter of the seven specifications of *making* an official writing and the seven specifications of *presenting* an official writing.

It was the contention of the defense at trial, and repeated here, that the surrender of the invoices at the request of the Captain amounted to an incriminating admission, the equivalent of an oral statement, and that, absent a showing that a proper warning under Article 31 of the Code, supra, and United States v Tempia, supra, had been given prior to the request, the evidence is inadmissible. United States v Nowling, 9 USCMA 100, 25 CMR 362; United States v Taylor, 5 USCMA 178, 17 CMR 178. See also United States v Corson, 18 USCMA 34, 39 CMR 34. The prosecution contested the objection on the ground that the documents being Government property the accused had no possessory interest in them and had no right to refuse an inspection by an authorized person. In the alterna-

tive, the Government asserted that on the assumption this might be classified as a search and seizure, Captain Courtemanche, suspecting he had caught these three individuals in the act of committing a crime, the request of the Captain was incident to a lawful apprehension and, therefore, his seizure of the documents did not require a prior warning. United States v Vail, 11 USCMA 134, 28 CMR 358.

The board of review did not reach the issues posed by the defense or the Government but, rather, based its rejection of the allegation that these documents were erroneously admitted on the ground that the facts fully supported the need for a search " 'under circumstances demanding immediate action to prevent the removal or disposal of property believed on reasonable grounds to be criminal goods.' MCM, 1951, par. 152. Such a search does not constitute an interrogation even though it is a question, request or order directed to the accused which reveals incriminating evidence. United States v Cuthbert, 11 USCMA 272, 29 CMR 88. Moreover, no warning with regard to rights against self-incrimination is required in such circumstances. United States v Harman, 12 USCMA 180, 30 CMR 180."

In its brief before this Court, the Government, correctly, we believe, makes the following statement:

"The facts of the instant case resist, *to a substantial degree,* rigid classification. They may variously be analyzed in the framework of a search or considered in the context of a request for a statement, either of which in turn gives rise to a myriad of provocative legal issues." [Emphasis supplied.]

Admittedly, the Government does not conceded error for it goes on to contend that regardless of the label ultimately attached to the actions of Captain Courtemanche, the overriding and dispositive consideration is that they cannot be interpreted in such a manner as to suggest that any legal right or privilege of the accused was violated.

While the Captain *suspected* these three Marines of *some* offense, it was not until later that his suspicions were confirmed. As he testified, he obtained the invoices and noted that the material listed on each was to be shipped to "21655," a code designation. It was then necessary for him to go to his nearby office and check his records to determine that this number represented the "5th COMM Bn." Returning to the truck, he checked the identification cards of these individuals and observed that not one of them was assigned to that unit. This "raised the question in my mind, 'why would they have issue mats made out for 5th COMM Bn?' And also why they drawn [sic] material against these issue mats for the 5th COMM Bn?" The boxes were then taken from the truck to his office and inventoried after the Captain returned from dinner. Apparently, not until it was determined at a later date that the 5th Communications Battalion had not ordered this clothing was the matter turned over to the Office of Naval Intelligence.

An investigator for that organization testified that after conducting an investigation he interviewed the accused some twenty-three days later. It might here be noted that the accused admitted the planning and his part in the carrying out of the scheme for obtaining this military clothing. According to this statement, the clothes were not to be sold but were to be distributed "to the 'grunts' in 3rd Bttn, 7th Marines. I was also going to give some of them to the guys in my company." As argued by defense counsel at trial, the accused was engaging in a practice referred to in military parlance as "cumshaw." There was no evidence of an intent to sell and, indeed, trial counsel was admonished by the law officer when, in argument before the court, he alluded to such a possibility. A clemency petition, signed by six of the seven members of the court recommending suspension of the bad-conduct discharge, led to the further recommendation by the Staff Judge Advocate that in view of the accused's

age, experience, good record, and altruistic motivation in taking the property and preparing the false documents, that the unexecuted portion of the sentence be suspended. The convening authority so acted.

Of primary concern to a resolution of the question of the admissibility of Prosecution Exhibits 1–7, is the state of the issue at the time of the law officer's ruling. When defense counsel interposed his objection of a lack of proper warning, the law officer inquired whether the invoices were not in fact Government records. Defense counsel conceded that they were but contended that since they contained incriminating matter accused was not required to produce them. Trial counsel asserted that in view of their nature, the Government had the right to examine these documents at any time in the transaction of business. Alternatively, trial counsel contended that "even if this were a so-called seizure," accused had no standing to complain since the papers were retrieved from the cab of the truck by one of the other Marines; and, assuming, for the sake of argument, that this was a search and seizure, Captain Courtemanche acted in the pursuit of a lawful apprehension, thus obviating the need for a prior warning under Article 31 of the Code, supra.

When he overruled the defense objection, the law officer gave no specific reason therefor, and the record does not show which of the several bases advanced by the prosecution served as his reason for ruling that the documents were admissible. Inasmuch as he himself raised the question of their ownership, prior to hearing from trial counsel, he apparently believed *no* reason was necessary to demand their production for the purpose of inspection. But that is not the holding of United States v Sellers, 12 USCMA 262, 30 CMR 262.

As we noted in *Sellers*, "Production of records held in a representative capacity may be compelled ▮▮▮▮▮▮▮▮ even though their contents would incriminate the custodian. McPhaul v United States [364 US 372, 5 L Ed 2d 136, 81 S Ct 138 (1960)]." (*Id.*, at page 267.) However, the action of the Government in demanding or seizing these records must still be reasonable. Cf. United States v Sellers, supra; United States v Workman, 15 USCMA 228, 35 CMR 200; McPhaul v United States, supra; Davis v United States, 328 US 582, 90 L Ed 1453, 66 S Ct 1256 (1946).

In the case at bar, the documents in possession of the accused were not being "held in a representative capacity," as the Government's custodian. They were in fact evidence of crime, as indicated by Charge II, and were the instrumentalities by which the accused and his cohorts perpetrated the larceny referred to in Charge I. It would appear, therefore, that they did not come within the ambit of the rule relating to lawful custodians expressed in *Sellers*, supra.

Captain Courtemanche did not proceed on that theory for, as he later testified, he suspected something was wrong and, before he asked for the invoices, he, assertedly, warned the three Marines involved. He gave what he called the "standard warning," in accordance with Article 31, Code, supra, and told them they could "have a lawyer counsel present." The record does not show that he complied with the warning requirements as to right to counsel, set down by the Supreme Court in Miranda v Arizona, supra. It should here be noted that the burden is on the Government to show the exact warning given and not depend upon a conclusion of the witness. United States v Hardy, 17 USCMA 100, 37 CMR 364.

His on-the-spot comparison of the invoices with the clothing and the boxes revealed nothing out of order. Only the fact that the three Marines were not from the unit to which the clothing was designated was extraordinary. Not until a check was made with the 5th Communications Battalion, the unit designee, was a determination made that there was in fact an irregularity.

We find the evidence bearing on the

issue of the admissibility of these exhibits not sufficiently developed on the record. At the very least, a hearing would be required for that purpose. Cf. United States v DuBay et al, 17 USCMA 147, 37 CMR 411. However, under the facts of this case, we believe that a rehearing would serve no useful purpose.

The accused was tried and convicted on November 13, 14, 1967, at DaNang, Republic of Vietnam. Although, as noted, the convening authority approved the findings and sentence, he suspended execution of the sentence for a period of six months, with provision for automatic remission. Since that period is long passed and we have not been made aware that the suspension order has been vacated, we may assume the accused has been performing his military duties in a satisfactory manner and that the entire sentence has been remitted.

In the exercise of our discretion, the case may be dismissed. United States v Sheeks, 16 USCMA 430, 37 CMR 50.

Accordingly, the decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. The charges are ordered dismissed.

Chief Judge QUINN concurs.

Judge DARDEN did not participate in the decision in this case.