UNITED STATES, Appellee,

v.

Mark A. QUINONES, Airman Recruit, U. S. Navy, Appellant.

No. 29,321.

U. S. Court of Military Appeals.

June 27, 1975.

---

4.   Cf. *United States v. Reitz*, 22 U.S.C.M.A. 584, 48 C.M.R. 178 (1974).

*Lieutenant Stephen T. Myking*, JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Terry O. Tottenham*, Esquire.

*Lieutenant J. Roosevelt, Jr.*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel P. N. Kress*, USMC.

## OPINION OF THE COURT

COOK, Judge:

The question presented by this appeal is whether the accused was denied individual military counsel in violation of Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838.

On December 12, 1973, the commanding officer of the Naval Air Station, Lemoore, California, referred for trial by special court-martial two specifications of larceny of Government property that had been filed against the accused. Lieutenant William R. Sampson was detailed as defense counsel. Two days earlier, Lieutenant Sampson had informed Lieutenant Rich, a judge advocate officer at the air station, that the accused wanted Lieutenant Rich as his individual counsel for the impending trial and that he, Sampson, would "bring it up" with the staff judge advocate. Lieutenant Rich had known the accused since the summer; he had advised him in a "mast" proceeding; and, in September, he had acted as accused's counsel in an administrative board proceeding.

Accused's request for Lieutenant Rich was discussed on December 12 at a meeting between the staff judge advocate and the two lieutenants. The staff judge advocate's "reaction . . . was negative." The next day, Lieutenant Sampson dictated a formal request for Lieutenant Rich, but, apparently, the document was not ready for signature when he left on December 17 for Christmas leave. Sampson returned on January 2, and on that day, submitted the request to the air station commander. On January 8, after a "brief" discussion of the matter with the staff judge advocate, the commander denied the request. He indicated he took this action because it had been "determined" that the lieutenant's workload was "so heavy and considerably backlogged" that he was not "reasonably available." After some proceedings before the military judge under the provisions of Article 39(a) of the Uniform Code, 10 U.S.C. § 839, on February 4, Lieutenant Sampson appealed the decision to the Commander, Light Attack Wing, U. S. Pacific Fleet, as the "next higher commanding officer," [1] who denied the request on the same day,[2] assigning the following reasons:

a. You are considered to be well qualified to represent the Accused.

b. A Pre-Trial Agreement considered favorable to the Accused has already been signed.[3]

c. There is no evidence that an attorney-client relationship concerning this case was established by the Accused and LT Rich prior to your being detailed as Defense Counsel.

---

1. *See* Manual for Courts-Martial, United States, 1969 (Rev), paragraph 48*b.*

2. The request for Lieutenant Rich as individual military counsel was renewed at trial, thereby preserving "the issue for . . . appellate scrutiny." *United States v. Cutting*, 14 U.S.C. M.A. 347, 351, 34 C.M.R. 127, 131 (1964). *Cf.*

*United States v. Hartfield*, 17 U.S.C.M.A. 269, 38 C.M.R. 67 (1967).

3. The parties stipulated that this statement is erroneous in that a pretrial agreement with the convening authority had orally been agreed upon on February 4, but it had not been signed, as asserted in the wing commander's letter.

d. LT Rich's workload is considered to be so heavy that he is not reasonably available.

In material part, Article 38(b), UCMJ, gives an accused the right to be represented by "military counsel of his own selection *if reasonably available*" [emphasis supplied]. Procedurally, a request for such counsel is considered, in the first instance, by the convening authority, with the accused having the right to appeal a denial to the next higher commander. Manual for Courts-Martial, United States, 1969 (Rev), paragraph 48*b*. Neither the Code nor the Manual prescribes criteria for determination of the availability of requested counsel. However, military courts have identified various circumstances that can be taken into account.[4] Essentially, there must be "a sound reason for denying to the accused the services of the representative whom he seeks." *United States v. Cutting*, 14 U.S.C.M.A. 347, 351, 34 C.M.R. 127, 131 (1964). Moreover, to provide a basis for accused's review of a denial of his request "the pertinent factors bearing thereon . . . [must be] spread on the record." *United States v. Mitchell*, 15 U.S.C.M.A. 516, 520, 36 C.M.R. 14, 18 (1965).

Both commanders indicated that Lieutenant Rich's workload was "so heavy" as to make him "not reasonably available."[5]

*United States v. Gatewood*, 15 U.S.C.M.A. 433, 434, 35 C.M.R. 405, 406 (1965), upheld a ruling of unavailability of requested counsel which was stated as follows:

The present general court-martial and Article 32 case load of counsel of this headquarters preclude assignment. . . None are reasonably available.

Measured by *Gatewood*, even without specificity of the matters in which Lieutenant Rich was engaged, the declaration as to his workload presents a "substantial" reason for his unavailability. However, as appointed defense counsel, Lieutenant Sampson moved before the military judge for review of the denial, and he presented evidence to support his contention that there was no reasonable factual basis for the denial. *See United States v. Cutting, supra,* 14 U.S.C.M.A. at 352, 34 C.M.R. at 132; *United States v. Mitchell, supra* 15 U.S.C.M.A. at 520, 36 C.M.R. at 18.

■ The evidence indicates that at the time the accused's request was denied by the convening authority, Lieutenant Rich's workload was different from what it was when the matter was presented to the wing commander. *See United States v. Barton*, 48 C.M.R. 358 (NCMR 1973), *petition denied* 22 U.S.C.M.A. 648 (1973). However, as the issue was submitted to the trial judge, the possible consequences of the differences were disregarded. As trial counsel remind-

---

4. *United States v. Vanderpool*, 4 U.S.C.M.A. 561, 566, 16 C.M.R. 135, 140 (1954), referred to consideration of "the exigencies and practicalities of whatever situation may obtain at the time" and indicated that counsel may be declared unavailable if his assignment as accused's counsel would "obstruct either other important operations of the service concerned or the orderly administration of justice." *United States v. Gatewood*, 15 U.S.C.M.A. 433, 35 C.M.R. 405 (1965), held that engagement of requested counsel in other courts-martial proceedings could establish unavailability. *See also United States v. Davis*, 46 C.M.R. 375 (NCMR 1971), *petition denied* 21 U.S.C.M.A. 627 (1972). *United States v. Barton*, 48 C.M.R. 358 (NCMR 1973), *petition denied* 22 U.S.C.M.A. 648 (1973), sustained a determination of unavailability predicated on the inordinate expense involved in transferring requested counsel to a distant place and to the fact that he would be absent from his regular organization for so long a period of time as to make it reasonably likely that his absence would adversely affect the organization's ability to meet its own needs for legal assistance.

5. Government counsel concede that reasons "a" and "b" given by the wing commander in his letter are insufficient to justify denial of the accused's request. They perceive the statement in paragraph "c," not as a reason for the unavailability of Lieutenant Rich but, as indicating that the commander was sensitive to the fact, recognized in *United States v. Eason*, 21 U.S.C.M.A. 335, 339, 45 C.M.R. 109, 113 (1972), that termination of an attorney-client relationship in an ongoing court-martial proceeding requires "something more than . . . workload" that would suffice to establish the unavailability of requested counsel. Thus, only the reason of heavy workload specified in paragraph "d" could justify the wing commander's ruling.

ed the judge, "the question for you . . is whether or not the convening authority abused his discretion." Consequently, although the parties have referred to some of the differences in their respective arguments, we limit our consideration to the matters that the evidence shows were before the convening authority. *See United States v. Griffin,* 15 U.S.C.M.A. 135, 136, 35 C.M.R. 107, 108 (1964).

Lieutenant Rich and the convening authority's staff judge advocate testified on the subject. As previously noted, Lieutenant Rich had represented the accused in other matters. His workload consisted of three major categories of activity: (1) military justice; (2) legal assistance; and (3) a project dealing with office efficiency and procedures which had been assigned to him in September. In military justice, he was assigned to six cases; three of these were "inactive" and none involved a general court-martial. A change of assignment in the military justice area occurred in the interval between the December 12 meeting with the staff judge advocate and January 8, when the convening authority denied the accused's request, but it can reasonably be inferred that the total workload was unaffected.[6] In legal assistance, he was the "second person to be asked . . . in the event that the legal assistance officer could not take" the matter. In all, he was "working considerably more than 40 hours per week." At the December meeting, except for asking Lieutenant Rich about the

efficiency project and whether he was "working *less* than 40 hours a week" [emphasis supplied], the staff judge advocate did not inquire into the details of the workload. But on December 22, when the lieutenant left on leave, he expressly instructed Lieutenant Rich that the office report was to be "ready for presentation by the 7th of January," which was the end of the leave period.

As noted earlier, Lieutenant Sampson filed the formal request for Lieutenant Rich on January 2. On January 7, Lieutenant Rich returned from leave and submitted a "draft" of the office project. Questioned about the sufficiency of this, the staff judge advocate conceded he could not "recall" that the lieutenant had to do "any significant additional work" on it. The next day, the staff judge advocate conferred with the convening authority on the accused's request; as a result, the convening authority signed a letter of denial that the staff judge advocate had prepared in anticipation of acceptance of his recommendation.

According to the staff judge advocate, he discussed the accused's request with the convening authority for about 5 to 10 minutes. The following excerpts from his testimony indicate two reasons for the convening authority's acceptance of the recommended denial.[7]

> I'm sure that I . . . referenced Lieutenant Rich's [workload]. . . . I recalled that he was working in excess

---

**6.** The inference is supported by several circumstances: (1) Lieutenant Rich testified that both at the December conference and in the month of January, approximately one-third of his total workload was devoted to military justice matters; and (2) as of the end of January, he had seven cases; four had been assigned between January 23 and 25; one was assigned about January 22, but, apparently, at about that time, the charges in one of his "inactive" cases were dropped because the accused was discharged from the service.

**7.** Government counsel advance a third reason for the denial. They maintain there was "a *predetermined* decision to alleviate the even heavier case load of other lawyers in the legal office" by assigning additional cases to Lieutenant Rich. [Emphasis supplied.] That con-

tention is largely an inference drawn from the assignment of five cases to Rich in late January. In our opinion, the inference is untenable for several reasons. First, although he had two separate opportunities to expound on the reasons for the denial, the staff judge advocate stated only two; secondly, the staff judge advocate also testified that he knew, but did not discuss with the convening authority, the fact that an additional attorney was to report to his office in January; thirdly, we construe Lieutenant Rich's testimony to indicate that by December, he had gotten into "rotation enough that . . . [he] was given [a] full load"; fourthly, although by the end of January Lieutenant Rich had seven cases, that number was only one more than he had had in December.

of 40 hours per week. And the fact that he had not completed a special project . . . which I had assigned a priority which of his knowledge deserved a high priority and had been pending since early September.

.    .    .    .    .

I suppose it's a matter of semantics. He [the convening authority] knows he's [Lieutenant Rich] working over 40 hours per week and there's the one project which he [the convening authority] recognizes of having had a high priority for several months was not completed. My interpretation and I assume he accepted it, that's certainly an indication that he's [Lieutenant Rich] backlogged and has a real heavy workload.

■ On the evidence, the only possible backlog in Lieutenant Rich's workload was in regard to the efficiency report. Appellate defense counsel contend that on the day the convening authority acted, "this was not a viable reason" for denial of accused's request. We agree.

The report was submitted to the staff judge advocate on January 7, the day before he conferred with the convening authority on the accused's request. The fair inference from his testimony is that, although described as a "draft," the report submitted by Lieutenant Rich was so sufficient in substance as not to require additional work. This reason for concluding that Lieutenant Rich was unavailable for assignment as individual military counsel to the accused is, therefore, factually unsupportable.

Turning to the nature of Lieutenant Rich's workload, we pointed out in *United States v. Gatewood, supra* 15 U.S.C.M.A. at 435, 35 C.M.R. at 407, that whether requested counsel is or is not available does not depend solely upon the number of court-martial cases in which counsel may already be involved. The staff judge advocate's testimony convincingly indicates that, from the standpoint of number, Lieutenant Rich's court-martial case load was not directly germane to the determination that he was unavailable. We need not, therefore, consider the factual correctness and legal implications of appellate defense counsel's contention that the staff judge advocate and the convening authority were actually ignorant of the lieutenant's case load.[8] Neither need we consider their contention that the intent of both Article 38(b), UCMJ, 10 U.S.C. § 838(b), and Navy policy[9] require that, in the assignment of military counsel, "greater" priority must be accorded to court-martial matters "than for other functions normally performed by them, especially legal assistance matters." We pass over these contentions because the staff judge advocate's testimony leaves no doubt that the preeminent factor in the decision to declare Lieutenant Rich unavailable was that he was working longer than 40 hours per week. In other words, a work week in excess of 40 hours equated to unavailability. To apply that formula to Article 38(b) reduces the accused's right to request individual military counsel almost to a meaningless ritual.

Few lawyers in Government service work less than the supposed standard of 40 hours a week. Not long ago, the Chief Justice of the United States Supreme Court recorded "77 hours of work per week over a one year period."[10] Many lawyers, and perhaps most engaged in litigation, work more than 40 hours a week. They may need, as Lieutenant Rich testified he did, to meet with other counsel or witnesses "at rather unusual hours" and at distant places. On the time card, such meetings may count as

---

**8.** It should be noted that the staff judge advocate testified that the convening authority had an "abiding interest" in the office operations "and received a copy of the docket." [Emphasis supplied.]

**9.** *See* Manual, Navy Judge Advocate General, para. 1904a (1972). This apparent policy was given specificity when the Judge Advocate General of the Navy promulgated section 0105 of the Naval Legal Service Office Manual which became operative subsequent to the events in issue.

**10.** Cannon, *An Administrator's View of the Supreme Court*, 22 Federal Bar News 109 (1975).

night and weekend work and overtime, but they do not necessarily indicate that the lawyer is so occupied as to be unavailable for other assignment.

The right which Article 38(b), UCMJ, accords to an accused of individual military counsel "if reasonably available" imports that the judgment as to availability will not depend solely on counsel's time card. Many situations can readily be imagined in which requested counsel's duties can, conveniently and readily, be postponed for a reasonable time, with no discernible adverse effects. Such postponement may be particularly feasible when, as here, requested counsel remains at his regular office and is immediately available for consultation if an emergency should arise in regard to a postponed matter.

 In *United States v. Cutting, supra* 15 U.S.C.M.A. at 352, 34 C.M.R. at 132, we observed that Congress did not intend that Article 38(b) be given "grudging application." We further indicated that in considering a request for individual counsel, the commander must weigh all relevant circumstances, "including the duties assigned" to counsel. *Id.* at 351, 34 C.M.R. at 131. Our reading of this record convinces us that the convening authority gave too little consideration to many relevant factors and inordinate consideration to the fact that Lieutenant Rich worked more than 40 hours a week. We conclude, therefore, that he abused his discretion in denying the accused's request.

The decision of the Court of Military Review is reversed, and the findings of guilty and the sentence are set aside. As the bad-conduct discharge adjudged at trial was suspended, with provision for automatic remission, and the probationary period has passed without vacation of the suspension, we also dismiss the charges rather than authorize a rehearing. *United States v. Dyjak*, 18 U.S.C.M.A. 81, 39 C.M.R. 81 (1969).

Senior Judge FERGUSON concurs.

Chief Judge FLETCHER did not participate in the decision of this case.