UNITED STATES

v.

Walter L. SEATON, Jr., 566 70 2965,
Private First Class (E–2), U. S.
Marine Corps.

NCM 75 2667.

U. S. Navy Court of Military Review.

20 June 1977.

LT Robert R. Sparks, Jr., JAGC, USNR, Appellate Defense Counsel.

CAPT W. D. Blalock, USMCR, Appellate Government Counsel.

Before MURRAY, Senior Judge, and MALLERY and GREGORY, JJ.

MURRAY, Senior Judge:

Tried to a general court-martial (rehearing) with members, the appellant was convicted, contrary to his pleas, of wrongful possession and sale of cocaine. The appellant's *original* trial occurred on 9 July 1975. On an appeal of his conviction therefrom, the appellant won a reversal of the findings and upon order of the United States Court of Military Appeals, the record was returned authorizing a rehearing. *United States v. Seaton,* No. 31,987 (U.S.C.M.A. 3 May 1976) *reversing United States v. Seaton,* No. 75 2667 (NCMR 21 January 1976).

On the appellate level, the appellant was represented by Captain Eugene A. Ritti, USMCR, both before this Court and the United States Court of Military Appeals. In the interim between the first trial and the subsequent rehearing authorized by the High Court, the appellant and Captain Ritti expanded the attorney-client relationship they had originally developed on the appellate level, and prior to his rehearing trial, the appellant, through his detailed trial defense counsel, petitioned the convening authority for the services of Captain Ritti, to act as individual military counsel in his behalf. At the same time, appellant also mentioned that he and Captain Ritti had discussed the facts of his case and that he (appellant) had "great trust and confidence in [Captain Ritti]." [Appellate Prosecution Exhibit 1.]. The convening authority, as he was required to do, sought from Captain Ritti's superiors a determination of whether he was reasonably available to defend appellant. [Appellate Prosecution Exhibit 2.]. The Officer in Charge of the Navy Appellate Review Activity, Captain Ritti's commanding officer, replied that Captain Ritti would not be permitted to defend appellant. [Appellate Defense Exhibit A]. But in support of his decision the responding officer cited not Captain Ritti's personal workload and obligation at the Appellate Review Activity, but the workload of the entire Appellate Defense Division. [*Id.*].

At trial, appellant renewed his plea for Captain Ritti's assistance and testified in detail as to his contacts with Captain Ritti. He stated under oath that he had spoken with his would-be counsel some five times prior to trial, [R. 13], the most recent conversation having dealt extensively with the charges at bar. [R. 15]. Accordingly, trial defense counsel took the position that there existed between appellant and Captain Ritti an attorney-client relationship which could not be severed by the Government but upon a showing of good cause. He also contended that in any event—relationship or not—Captain Ritti's availability to defend appellant should be a function more of his own workload than that of the entire appellate defense wing. [R. 11, 17].

█ The Government presented no evidence on the defense request, and the trial judge, without comment, decided the issue adversely to the appellant. We are not satisfied with the trial judge's apparent decision to do no more on the request for counsel and its related underlying issue of denial of counsel other than to maintain a record that could be reviewed when the issue could be heard by appropriate reviewing authorities as was urged by the prosecutor. [R. 17]. The trial judge should have assumed the initiative in this instance and thoroughly examined the issue on the trial level in litigating the motion.

█ Be that as it may, the issue before our Court is whether or not there was an abuse of discretion in refusing to permit Captain Ritti to represent the appellant at

**814**

trial.[1] In aid of our determination of that issue, this Court directed affidavits from Captain Ritti and the Director, Appellate Defense Division, Naval Appellate Review Activity, on the following points:

Information desired from Captain Ritti: (1) What was your caseload as an appellate defense counsel at the time of receipt of appellant's request for you as individual military counsel?

(2) What was the extent of the relationship developed between you and the appellant that might lead the appellant to believe that you were willing and able to represent the appellant at his rehearing (general court-martial), and to what extent did you inject yourself into the matter of the rehearing through advice to the appellant on procedural and substantive issues which would lend itself to the formation of an attorney-client relationship? This aspect is essential as to its clarification irrespective of whether or not you might have violated any internal policy or procedural guidelines of the Navy Appellate Review Activity.

Information desired from the Director, Appellate Defense Division:

What was the total caseload of the Appellate Defense Division at the time of receipt of the appellant's request for Captain Ritti's services; what were Captain Ritti's responsibilities in relation to the then existing caseload?

■ As a result of the evidence of record and the affidavits submitted by Captain Ritti and the Director, Appellate Defense Division, we are persuaded that an attorney-client relationship had developed beyond that originally formed on the appellate level, and that Captain Ritti had provided *substantial* procedural and substantive counselling to the appellant in matters relating solely to his trial on the rehearing well after the appellate phases had terminated by reversal of appellant's original conviction. The record and allied papers attached furnish convincing evidence to attest to this relationship.[2] Such relationship could not be severed without a showing by the Government of "good cause." *United States v. Eason*, 21 U.S.C.M.A. 335, 45 C.M.R. 109 (1972). *Cf. United States v. Roman*, No. 74 0296 (N.C.M.R. 26 January 1976).

■ The Government argues that the discussions between Captain Ritti and the appellant were limited in number, and the staff judge advocate in his review [SJAR p. 3] suggests that the appellant and Captain Ritti could not form an attorney-client relationship until "authorization had been granted" by Captain Ritti's superiors. The contentions are without merit for it is not the law that a client and his counsel must meet with each other a given number of times before a relationship exists, nor is there any statutory, regulatory, or policy mandate that proscribes the actual formation of that relationship without a higher imprimatur irrespective of how troublesome that relationship might be. Whether or not counsel is reasonably available to serve in a representative capacity or whether the relationship must of necessity be terminated are *ad hoc* considerations that must be addressed, but they are not controlling as to whether or not the attorney-client relationship actually sprang into being.[3]

---

1. *United States v. Gatewood*, 15 U.S.C.M.A. 433, 35 C.M.R. 405 (1965).

2. At one point Captain Ritti erroneously considered this Court's request for an affidavit as extending to matters of privileged communication, which it did not. Captain Ritti, however, correctly refrained from any such disclosures and furnished the Court with only the information we actually sought.

3. We have been advised that there is no directive currently in effect specifically restricting appellate defense counsel, detailed in the Office of the Judge Advocate General pursuant to Article 70, UCMJ, 10 U.S.C. § 870, from expanding, as was done in this case, an attorney-client relationship resulting from counsel's detail to represent an accused on appeal. Although we believe such restriction is perhaps implicit and certainly contemplated, given the bifurcated system of trial and appellate representation designed by Congress in enacting the Uniform Code of Military Justice, problems incident to a gratuitous establishment of a viable attorney-client relationship can be avoided by the Judge Advocate General expressly limiting the function of appellate counsel assigned in his office to providing appellate representation

In the instant case we find that such relationship did exist, and thus we turn to the second prong of the question, i. e. was the denial of the services of Captain Ritti for the appellant an abuse of discretion. In this respect we note that the record and the supporting affidavits reveal that the denial of Captain Ritti's representation was based upon the workload of the Appellate Defense Division and not on Captain Ritti's personal workload. The Director of the Division concedes that Captain Ritti's workload, as stated also in Captain Ritti's affidavit, was negligible in relation to the existing caseload in the Division. The facts are clear that Captain Ritti through diligent application of effort had worked his cases down to practically zero and from the perspective of his assigned responsibilities both at the time of appellant's original request and of his renewed request at trial for Captain Ritti's services, Captain Ritti was not committed to pending work of such magnitude or demands that he would not have been able to represent the appellant without jeopardizing his other existing responsibilities. *Cf. United States v. Barton*, 48 C.M.R. 358 (N.C.M.R.1973).

While we recognize that the right to military counsel of an accused's own selection is not an absolute right granted him, but is subject to the exigencies and practicalities of whatever situation may obtain at the time,[4] we find nothing in the record or supporting documents that indicates any requirement imposed on Captain Ritti of any proportion that would lead to the conclusion that he could not be reasonably made available to represent the appellant as requested.

This Court is fully aware that cases in the Appellate Defense Division are assigned to individual counsel and are not the collective responsibility of the entire office. If one counsel is able to reduce his personal case load, we know he is not ordinarily given cases already assigned to others. If Captain Ritti was able to reduce his case load to virtually none, then it would appear that he was reasonably available to defend the appellant. The Officer in Charge of the Navy Appellate Review Activity, Office of the Judge Advocate General, was obliged to consider Captain Ritti's personal case load, along with other existing factors, in determining Captain Ritti's availability to defend the appellant at his rehearing. Nothing in the record or allied documents (Appellate Defense Exhibit A or the affidavits) gives evidence that he did so. What the United States Court of Military Appeals said in *United States v. Quinones*, 23 U.S.C.M.A. 457, 50 C.M.R. 476, 1 M.J. 64 (1975) is applicable here:

> In *United States v. Cutting, supra* at 352, 34 CMR at 132, we observed that Congress did not intend that Article 38(b) be given "grudging application." We further indicated that in considering a request for individual counsel, the commander must weigh all relevant circumstances, "including the duties assigned" to counsel. *Id.* at 351, 34 C.M.R. at 131. [50 C.M.R. at 480, 1 M.J. at 69].

The trial judge could have resolved all of these matters in litigating the motion, but the defense was prevented from presenting certain evidence in these premises, in that the appellant's pretrial requests for the testimony of both Captain Ritti and his immediate superior Commander Eoff, were denied by the convening authority, [Appellate Defense Exhibit D], and yet the staff judge advocate pointed out in his post-trial review that there was no competent evidence of how the workload at this office was distributed, and that appellant's testimony that Captain Ritti had reduced his case load to one [R. 15] was unsubstantiated. [SJAR at

---

only. Compliance with a clearly expressed delineation of functions would preclude unsanctioned volunteer efforts where the Judge Advocate General is divested of his rightful role in the management of Navy legal resources. The present absence of specific guidelines allows a potential for abuse whereby the Judge Advocate General's authority and responsibility to effectively manage his limited lawyer resources could be jeopardized, mischievously or otherwise.

4. *United States v. Vanderpool*, 4 U.S.C.M.A. 561, 16 C.M.R. 135 (1954).

7]. This can hardly be viewed as fair commentary by the staff judge advocate since it appears that after the defense had asked for, and had been refused, witnesses who could easily testify to the general workload of the office and the personal case load to Captain Ritti, the staff judge advocate complains of the meagerness and the form of what remaining evidence the defense was able to present to the court on these points.

 So as to dispel any deficiency created by tactics, we make our determination on the basis of a detailed awareness of the workings of the Appellate Review Activity and of the workload of both the Defense Division as a whole and Captain Ritti individually at the time of the requests for his services as counsel. [Affidavits of Commander Eoff and Captain Ritti]. In this framework, we find that Captain Ritti was reasonably available to represent the appellant as requested, that denial of his services was an abuse of discretion under the circumstances then existing, and that the attorney-client relationship which had been formulated between Captain Ritti and the appellant was improperly severed without good cause.

Under the circumstances, the appellant was denied a fundamental right granted under Article 38, Uniform Code of Military Justice, 10 U.S.C. § 838. The findings and sentence cannot stand.

Accordingly, the findings and sentence are set aside and the record returned to the Judge Advocate General of the Navy for appropriate disposition. A rehearing may be authorized.

Judge MALLERY and Judge GREGORY concur.