UNITED STATES, Appellee,

v.

David G. SAULTER, Sergeant, U. S. Marine Corps.

No. 32,412.

NCM 75–2748.

U. S. Court of Military Appeals.

Aug. 7, 1978.

For Appellant—Captain Joseph F. Smith, USMCR (argued).

For Appellee—Lieutenant Steven D. Moore, JAGC, USNR (argued); Lieutenant Colonel P. N. Kress, USMC (on brief).

## Opinion of the Court

FLETCHER, Chief Judge:

Consistent with his pleas, the appellant, on August 22, 1975, was found guilty by a general court-martial of one specification of

selling phencyclidine, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892; as well as five specifications of selling marihuana, and one specification of possessing marihuana, in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was sentenced by the military judge to a bad-conduct discharge, confinement at hard labor for 2 years, forfeiture of all pay and allowances and reduction to the lowest enlisted grade.[1] On March 25, 1976, the United States Navy Court of Military Review affirmed the findings and sentence. On July 1, 1976, we vacated the decision below, with direction to hold further proceedings in abeyance pending our decision in *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976). On December 20, 1976, in light of the *McCarthy* decision, the Court of Military Review reaffirmed the findings and sentence.

Of the several issues granted for review, only two require discussion in the resolution of this matter. They are:

WHETHER THIS COURT IS BOUND BY THE FEDERAL DISTRICT COURT'S RULING THAT THERE IS COURT–MARTIAL JURISDICTION OVER ALL BUT ONE OF THE OFFENSES.

WHETHER THE COURT–MARTIAL LACKED SUBJECT MATTER JURISDICTION.

The first issue to be resolved by this Court is the effect of the denial of the appellant's Petition for Habeas Corpus by the United States District Court for the Eastern District of North Carolina. That honorable court deemed it necessary to decide the jurisdictional questions raised by the defendant in determining the propriety

---

1. On September 3, 1975, the appellant, while serving confinement as a result of this court-martial sentence, filed a Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of North Carolina. At that court's direction, he filed a Writ of Habeas Corpus with the United States Court of Military Appeals on December 15, 1975, which was summarily dismissed on December 22, 1975. In February 1976, Judge Larkin denied the petition, but in an unpublished Memorandum Opinion and Order he reached the jurisdic-

tional questions raised by the appellant. *Saulter v. Poggermeyer*, 18 Crm.L.Rep. 2505 (No. 75–0037–Civ–4., E.D.N.C., February 18, 1976). He found service connection for the sale offenses but not for the possession offense. This denial of the petition by the federal court was appealed by Sergeant Saulter to the United States Court of Appeals for the Fourth Circuit. A Government motion to stay the proceedings was granted until the decision of the United States Court of Military Appeals was rendered on direct review.

of the restraint of his liberty resulting from the court-martial sentence. It found service connection and, concomitantly, jurisdiction for the court-martial over all the offenses save simple possession. Accordingly, that federal civilian court denied the appellant's writ. These same jurisdictional questions are now before this Court on direct review of the original court-martial proceedings.

▮ The doctrine of collateral estoppel, reduced to its bare essentials, requires that once some question or fact in dispute has been judicially and finally determined by a court of competent jurisdiction, further litigation on the same issue is precluded in a different cause of action between the parties bound by the prior judgment. *See* 1B Moore's *Federal Practice* ¶ 0.441[2] (2nd ed. 1974). This doctrine, though of civil origins, has been held applicable to the criminal trial. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916). Moreover, it operates in the military justice system through the doctrine of *res judicata*, but only to the benefit of an accused. *See United States v. Guzman*, 4 M.J. 115 (C.M.A.1977); paragraph 71*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). In any event, in the case at bar, the appellant properly appealed to the Court of Appeals the decision of the District Court denying the writ on this very issue of court-martial jurisdiction. Since the Government concedes that the findings of the District Court are not final, at least as to their determination of service connection, it is not necessary for us to reach the question of their binding effect, if any, upon us. *See also United States v. Logemann*, 22 U.S.C.M.A. 525, 48 C.M.R. 10 (1973); *United States v. Goguen*, 20 U.S.C.M.A. 527, 43 C.M.R. 367 (1971). Moreover, our conclusion that no court-martial jurisdiction existed over the possession offense[2] obviates the need for our ruling on the binding effect of the dismissal of that charge by the District Court. *Cf. Schlesinger v. Councilman*, 420

U.S. 738, 754–759, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1976). Accordingly, we must proceed to the question of the service connection, if any, of the drug-sale offenses.

The jurisdictional criteria utilized by the Court of Military Review were found in two stipulations of fact, which were described by that Court as follows:

The first of these stipulations established that appellant was continuously on active duty with the United States Marine Corps during the period that the alleged offenses were committed and that he was a military policeman. . . . The pertinent parts of the second stipulation of fact state, *inter alia*, that:

"All the charged offenses transpired while the accused was off-base and out of uniform. However, all of the sales were conducted as a result of the military association of the accused with individuals that the accused worked with and were known to him to be active duty Marines serving as military policemen. These individuals were in fact, at that time, on active duty with the Marine Corps and working as military policemen. None of them were utilized as undercover agents or informers by any law enforcement agency."

The Navy Court of Military Review in part concluded that since there could be no more pervasive military interest than halting a drug-dealing military policeman who supplies his military police friends with drugs, jurisdiction existed over all the offenses.

▮ Jurisdiction over the drug sale offenses in the present case must be affirmatively established by the Government in the record of trial without recourse to traditional military law presumptions found constitutionally insufficient to show service connection. *See United States v. Alef*, 3 M.J. 414 (C.M.A.1977); *United States v. McCarthy, supra; United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976). Here, the military judge found jurisdiction solely on the basis of the military status of the appellant and

2. *See United States v. Williams*, 2 M.J. 81 (C.M.A.1976).

the purchasers of the drugs. This finding is clearly erroneous.[3] The Court of Military Review found sufficient service connection in the appellant's offenses by relying heavily on the official positions of the parties to the transactions as military policemen. In addition, it apparently made several far-reaching inferences of jurisdictional facts from the limited enigmatic stipulation that the sales occurred as a result of the parties' military association. The former jurisdictional factor we find insufficient; the latter assumptions we deem unjustified as a matter of fact and law. There is simply no evidence in the record of trial that any military association between the parties to this transaction either on base or in the performance of their duties brought about the sales of drugs to these servicemen. *See United States v. Wilson,* 2 M.J. 24 (C.M.A. 1976). Moreover, there was no finding of fact by the military judge or the Court of Military Review that the appellant had either used, purchased, introduced, or sold the drugs on a military installation. *See United States v. Williams,* 2 M.J. 81 (C.M.A. 1976). Finally, there is no clear indication in the record of trial of any perceived likelihood of introduction of these drugs onto a military base as in *United States v. McCarthy, supra.* Such jurisdictional inferences as a matter of fact and law can not be drawn where the record of trial contains only a stipulation of fact so ambiguous on its face as to provide for them no substantial support. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *see also United States v. Simmons,* 3 M.J. 398 (C.M.A.1977).

■ The facts before this Court indicate that the drug sales occurred off base while the parties were out of uniform and off duty. *See United States v. Alef, supra.* In view of our earlier determination, the sole factor upon which jurisdiction might be predicated is the footing of military policeman common to the appellant and the purchasers of the drugs. It is unreasonable to suggest that every criminal offense committed off base by a military policeman, even if in the company of other military policemen, is service connected simply due to the nature of their unrelated duties as military law enforcement officials. The jurisdictional requirements, which are the same for the court-martial of all service members, are non-existent in the present case. *See Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), and *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

The decision of the United States Navy Court of Military Review is reversed. In the interests of justice, the charges are dismissed. *See United States v. Dyjak,* 18 U.S.C.M.A. 81, 39 C.M.R. 81 (1969); *United States v. Sheeks,* 16 U.S.C.M.A. 430, 37 C.M.R. 50 (1966).

PERRY, Judge (concurring):

I concur in the opinion of the Chief Judge. However, I add these comments in view of a statement in my Brother Cook's dissenting opinion which I believe needs to be addressed.

As the Chief Judge's opinion points out, there was a stipulation of fact between the parties at trial that "all of the sales were conducted as a result of the military association of the accused with individuals that the accused worked with and were known to him to be active duty Marines serving as military policemen." The Government, in its brief on this issue, suggests: "The only logical inference to be drawn therefrom is that appellant and his buyers, Corporal Whitehurst and Lance Corporal Stewart, discussed the availability of drugs at appellant's off-post residence in the course of their military duties."[1] Thus, in the view of the Government, the criminal enterprise "was formed on base, during duty hours and in the course of the military duties of

---

3. However, it should be noted that this finding was on August 25, 1975, more than a year prior to this Court's decision in *United States v. Hedlund,* 2 M.J. 11 (C.M.A.1976).

1. Brief on Behalf of the United States, page 12.

appellant and the transferees."[2] Judge Cook apparently accepts this suggestion, for he refers to "[t]he majority's separation of the *preliminary on-base activities* from the final off-base act." (Emphasis added.)

The stipulation relied upon by the Government, and apparently by Judge Cook, is ambiguous at best. I read it to suggest that the buyers, by virtue of being military policemen like the appellant, simply became aware through that association, of his activities, not that they approached him during duty hours on post to make arrangements for sale. As it is the burden of the prosecution to establish jurisdiction over the subject matter of a court martial, see *United States v. Alef*, 3 M.J. 414 (C.M.A.1977), and *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976), I cannot draw the "inference" urged by the Government and embraced by Judge Cook.

Moreover, even if the inference lies, that does not alone permit the exercise of court-martial jurisdiction over the sales which occurred off post. The Government had a statutory remedy for vindication of its interest in discouraging such "on-base activities" as negotiations on the installation: Article 81, Uniform Code of Military Justice, 10 U.S.C. § 881, Conspiracy. *United States v. Hedlund*, 2 M.J. 11 (C.M.A.1976); *United States v. Washington*, 1 M.J. 473 (C.M.A.1976). However, the appellant was not charged with the conspiracy, but rather with the substantive offense itself.

COOK, Judge (dissenting):

As to the effect of the civilian court proceeding, I agree that we are not foreclosed, either as a matter of comity or legal principle, from determining the jurisdictional question raised by accused. *United States v. Goguen*, 20 U.S.C.M.A. 527, 43 C.M.R. 367 (1971), is inapplicable because there, pursuant to a final judgment of the civilian court, the Army had released the accused from the service. Here, the District Court's determination was appealed to the Court of Appeals for the Fourth Circuit and further proceedings were stayed until this Court "acts on the case." In this situation, it seems to me that the outstanding judgment has not been treated as final by the parties and the civilian courts, and we are bound, therefore, to review the jurisdictional question.

On the merits, the Court of Military Review found that, "while performing police duties" on base, the "buyers" in the later transactions off base learned that the accused was a seller and that his place of business was his off-base home. The court concluded, and so do I, that the off-base sales were directly "tied to and grew out of the on-base military duties" of the accused and his purchasers. The majority's separation of the preliminary on-base activities from the final off-base act allows a drug dealer to advertise his wares and his place of business while on base, free from all military restraint. In essence, therefore, the accused is authorized to flout the official efforts to contain a problem that the majority, itself, has acknowledged is "serious." *United States v. Alef*, 3 M.J. 414 (C.M.A.1977).

I have examined the other assignments of error, and I am satisfied none merit reversal of the findings of guilty or the sentence. I would, therefore, affirm the decision of the United States Navy Court of Military Review.

2. In its opinion below, the Navy Court of Military Review may likewise have so concluded, for one of the factors relied upon by that court to find jurisdiction here was "the formation of the criminal intent for the offense on base." This could mean that the court believed the appellant simply decided while on post to engage in these acts, or it could mean that the court, as does the Government, believed that the appellant and these buyers engaged in negotiations on post for these specific sales. In either event, for the reasons to be discussed, *infra*, the conclusion is unsupported by any evidence of record and is neither binding nor persuasive.